Pettis County *v.* Kingsbury.

PETTIS COUNTY, Plaintiff in Error, *vs.* KINGSBURY, Defendant in Error.

1. A county court made an order appointing a commissioner to let the building of a bridge to some undertaker who would wait for his pay "until the amount is received from the state out of the road and canal fund." The commissioner, under this order, let the building of the bridge to A., who entered into a bond, which recited the order of the court, and contained an agreement "on the part of the county court, *as said court*," to pay a certain sum on the completion of the work, provided that, "if there be not a sufficient amount of the dividend of the road and canal fund on hand, at the time of the completion of the bridge, the said undertaker is to wait on or indulge the said county by receiving of said county as fast as said funds shall arrive." After the completion of the work, A. received a warrant on the county treasurer, "payable out of the road and canal fund," which was assigned to the plaintiff. *Held*, the plaintiff could only look to the road and canal fund, and could not compel the county to pay the warrant out of its own proper funds.

### Error to Pettis Circuit Court.

The county court of Pettis county, at its August term, 1845, made the following order : " Ordered, that Henry S. Greer be appointed commissioner to let the building of a bridge at or near Wasson's mill ; the site of said bridge to be selected by himself, to be built after the same plan of the bridge near Thomson's mill. The undertaker to furnish his own materials, and to wait for the pay until the amount is received from the state out of the road and canal fund, but to receive inter-

est at the rate of ten per cent. per annum on the amount from due until paid, and to report his proceedings to the first term of this court after the letting ; he is to require of the under-taker bond with approved security," &c.

In pursuance of this order, the commissioner let out the building of the bridge on the sixth day of September, 1845, when Harden Corum, Absalom McCoy and John T. Woodson became the undertakers for the sum of two thousand nine hundred dollars, who entered into bond with security, at the time last above stated, which bond was in the usual form, and after reciting the order above set forth, and stipulating to build the bridge in the manner agreed upon, contained this agreement on the part of the county : " For and in consideration of the building of the said bridge as aforesaid, the county court of Pettis county, *as said court,* agrees to pay to the said Harden Corum, Absalom McCoy and John T. Woodson, the sum of two thousand nine hundred dollars, so soon as the said bridge shall have been completed as aforesaid ; provided, however, and it is agreed by and between *the said court* and the said undertakers that, if there be not a sufficient amount of the dividend of the said county of the road and canal fund on hand, at the time of the completion of the said bridge, the said un-dertakers are to wait on or indulge the said county by receiv-ing of the said county as fast as said funds shall arrive ; and *the said county court* agrees to pay the said undertakers inter-est on the amount which said county may not pay at the time of the completion of the said bridge, at the rate of ten per cent. per annum until paid."

At the February term, 1848, of the county court of Pettis county, James Kemp was appointed commissioner of the bridge, who reported, during the same term, that the bridge had been built according to contract, with some slight varia-tions, made by the directions of the former commissioner ; this report was received by the court and ordered to be filed, and, at the same time, it was further ordered, that a warrant issue to Harden Corum for the sum of two thousand three hundred and

ninety-eight dollars and forty-three cents, payable out of the road and canal fund, to bear interest at ten per cent. per annum, as warrant number nine. Thereupon, a warrant of the following tenor was issued and delivered to said Corum :

" Warrant No. 9.

" Treasurer of the county of Pettis, pay to Harden Corum, two thousand three hundred and ninety-eight dollars and 43-100 cents, payable out of the road and canal fund, to bear interest at the rate of ten per cent. per annum from this date. Given at the court house, this 9th day of February, 1848. By order of the county court. John S. Brown, president. Test : A. Roberson, clerk.

By endorsement for value received, this warrant was assigned to Jere. Kingsbury, the plaintiff, on the ninth day of March, 1848. No part of said warrant, or the interest thereon, was ever paid by the county.

This suit was commenced on the 24th day of March, 1852, by Jere. Kingsbury, the plaintiff, and the question is, whether he is bound, under the facts stated, to wait on the road and canal fund for payment, that being an uncertain and fluctuating fund, known to be so at the time of letting the bridge, or whether he can sue the county and recover the full amount from her out of her own proper fund ?

The court below found for the plaintiff.

*Napton*, for plaintiff in error. The plaintiff, being assignee of the warrant upon the road and canal fund, must look to that for his rights. He has no concern with the original contract between Corum and the county. *Glenn* v. *Smith*, 2 Gil. & Johns. 508. *Harris* v. *Johnston*, 3 Cranch, 311. 4 Litt. 289, 317. But conceding the plaintiff to stand in the shoes of Corum in every respect, then it is submitted that a fair construction of the order of the county court, the contract and the warrant, in short of the whole transaction, shows a clear intent on both sides to charge the road and canal fund of Pettis county, and that alone. R. C. 1845, title " Road and canal fund." The fluctuating nature of the fund was known to the

contracting party, and we may well presume that he contracted with reference to it, and at a price greatly beyond the cash value of the work.

*Adams* and *Leonard*, for defendant in error. 1. By the contract, the road and canal fund was not relied upon alone for payment, but was merely to be looked to as a means of payment ; and after waiting a reasonable time upon this fund, a right of action accrued for the whole debt and interest. 2. By the contract, the road and canal fund was not to be looked to at all for the *interest*, which was to be paid annually, without regard to the sufficiency or insufficiency of the fund. 3. The warrant was not a payment of the debt. 5 J. R. 72. 9 J. R. 310. Story on Notes, §104, 105, 117, 404. 9 Mo. Rep. 59. 8 J. R. 389. 4. The plaintiff, by the assignment, succeeded to all the rights of Corum.

SCOTT, Judge, delivered the opinion of the court.

1. When the road and canal fund was first distributed among the counties of the state, in February, 1833, the several county courts were constituted boards of internal improvements in their respective counties, for the management of it. They were required to appropriate it to the building of bridges, the opening of roads and making canals. The act of 1845, concerning the road and canal fund, which was in force when the contract involved in the present controversy was made, though somewhat variant in its provisions from that originally enacted, yet retains its main features. The seventh section of this act requires the fund, when received, to be placed in the county treasury, and to constitute a separate fund, to be called the " county road and canal fund," and to be managed, stated and accounted for separately from the general funds of the county. The tenth section of the act gives the county court control of the fund and directs its application to the construction and improvement of roads, bridges or canals, and forbids its use for other purposes.

The object of these citations is to show that the county court, in its conduct in relation to the road and canal fund, acts in a different capacity from that it sustains, when acting in regard to the money of the county in the treasury ; that the road and canal fund is a separate one, devoted to particular purposes, and managed by the county court as a board of internal improvement. If this view of the subject is just, it would seem to follow that, in weighing the conduct and interpreting the contracts of the county court in relation to that fund, we should not blend and confound its powers as a board of internal improvement, with those which it may exercise over moneys belonging to the county. The county court as such may, at the expense of the county treasury, build bridges for the accommodation of its inhabitants. In so doing, it conforms its action and that of its agents to the law relating to the building of county bridges. When a bridge is to be built with the road and canal fund, it acts as a board of internal improvement, and conforms its action to the law in relation to that fund. If the county court of Pettis county, in taking steps to build the bridge which has given rise to this controversy, acted under the law to provide for building bridges, it failed to take an important preliminary measure required by the seventh section of that act. It does not appear that, either from its own information, or from the report of a commissioner, the court was informed of the cost of the bridge, or that any appropriation was made, conformable to an estimate of its cost. Nor was there any order in pursuance to the eleventh section of the act, directing the expense of it to be paid out of any money in the treasury. This, taken in connection with the order for building the bridge, which was the first step in the matter, and with the warrant, which issued for paying for the bridge, shows that the county court, in this transaction, acted as a board of internal improvement. There is nothing in the order or in the warrant, which shows that the court intended to bind the county for the expense of building the bridge. On the contrary, from the face of those papers, such an idea is excluded, and the ob-

vious import of them is, that the bridge should be paid for out of the road and canal fund, and out of that fund alone, and this applies as well to the interest as to the principal. We do not conceive that there is any thing in the contract of the undertakers of the bridge, which is irreconcilable with this view of the subject. The contract must be construed in reference to the subject matter. The order, appointing the commissioner to build the bridge, is the substratum of this whole transaction, and if the contract, in its terms, can be shown to be conformable to this order, we are not warranted in straining them, and by a kind of judicial midwifery, deliver it of an interpretation, which never entered into the heads of those who were parties to it. The order of the court, directing the bridge to be built, is recited in the bond of the undertakers. It will be observed, that the county court only binds itself as a court. The words of the bond are, "the county court of Pettis county, *as said court*, agrees," &c. There are no words binding the county. The order of the court expressly directed that the cost of the bridge should be paid out of the road and canal fund, and that the undertakers should wait for their pay until the amount should be obtained from the state, receiving interest on the sum at the rate of ten per cent. from the time it was due until paid. Now, as it is obvious that this order was before the parties when they contracted, for it is recited in the bond, why should we put a construction upon the contract which would make the commissioner violate his duty, and the undertakers guilty of a fraud; for it is a fraud, knowingly to obtain from an agent a contract in breach of his duty. There is nothing in the record which shows that the contract was ever in the office of the clerk, or was known to the court before the bridge was accepted, which was on the 8th February, 1848. Even if there was, there is no evidence that it ever approved the bond, in the sense in which it is understood by the plaintiff. The warrant that issued shows how it interpreted the contract. The original parties to the contract put an interpretation upon it which is entirely consistent with the original order. The

warrant is a just interpretation of the contract. It was accepted by the undertakers. As it cannot be shown that the county court ever sanctioned the bond containing the contract in any other sense than as expressed in the warrant, and as the warrant is in conformity to the order under which the commissioner acted, the contract, if variant from the order, is not obligatory on the court, for the want of authority to make it. The contract is not signed by the commissioner of the county. The undertakers and their sureties have only put their names to it. The court can only be made liable by showing that it was adopted by it. But we conceive that the order, the contract, and the warrant harmonize, and it is only by discarding the order and warrant that a construction can be put upon the contract which gives the least countenance to the view of the matter maintained by the plaintiff.

The same considerations which lead us to the conclusion, that the road and canal fund was only to be resorted to, for the payment of the amount of the cost of the bridge, incline us to the opinion, that the interest, as an incident, would share the fate of the principal. If the county court designed that the bridge should be built with the road and canal fund, we see no reason why the interest, for the delay of payment, should be paid out of another fund. There is nothing in the contract which would any more warrant the payment of the interest out of the county treasury than the principal.

This conclusion has been arrived at after mature consideration of the question. We know that contracts for labor, that are to be paid out of the road and canal fund, unless it is already in the treasury, are undertaken at prices greatly above those at which they would be let if the satisfaction of them was to be obtained out of the county treasury. Such contracts become a matter of speculation, and undertakers indemnify themselves by greatly increased prices. To permit them, when their ventures had resulted disastrously, to convert prices, obtained under such circumstances, into claims against the county treasury, would be great injustice. It would be allowing

them to play, heads I win, tails you lose. There are counties in this state that would be bankrupted, if the holders of warrants on the road and canal fund could convert them into demands against the county — warrants that were issued for labor undertaken at ten times its real value, because of the mode of their payment.

The other judges concurring, the judgment will be reversed and the cause remanded.