Neilson, Ch. J.
This action was brought to recover a balance of $178,000, claimed to be due for work done upon, and materials furnished for the Hempstead Reservoir by the plaintiffs, under their contract with the defendant.
The answer sets up new matter to impeach the validity of the contract, and the good faith and management of the plaintiffs, and of the persons who acted officially in making that contract, and controverts the claims in the complaint stated. It was drawn with great care, and is broad enough to admit whatever pertinent evidence the defendant may have to offer. The learned counsel for the corporation has thus evinced an earnest desire to protect the rights of the city. But in view of the papers on file, and of the accounts kept in the proper department, he could not, and does not, deny the formal making of the contract, or that the plaintiffs had proceeded to act under it. On the contrary, the answer states that the plaintiffs had done *120 work, and furnished materials of the value of more than $200,000, and have been paid the fair value of the same, and all that in and 'by the pretended contract was agreed to be paid. An observation, made by Mr. Parsons on his argument, was quite in keeping with this aspect of the pleadings : 16 They would not dispute that there was, in form, a contract obtained, but they would try to prove that it was obtained under such circumstances, and by such means, that the court should not require its enforcement.”
Under these pleadings, the plaintiffs could put the contract in evidence on the trial. But if the execution of it, and the power of the persons acting officially in respect to it, are to be regarded as fully denied, no special legal difficulty would attach to this branch of the case. The rule common to cases where the defendants sought to be charged on contracts made by agents, put the plaintiffs to the proof not only of the execution by, but of the authority, of the agents would apply. Nor would such difficulty exist if the fraudulent management, which on mere information and belief is set set up in the answer, should be proved. The questions thus presented would be of mere fact, governed by principles simple and of easy application.
My appreciation of the case, and of the arguments of the learned counsel for the defendant, has led me to make a careful examination of the numerous authorities cited by them. Mr. De Witt’s brief seemed to demand that special attention. I agree with him that the case of Welsh v. Darragh* (52 N. Y. 590), is to be distinguished from this case in one aspect—the fraud set up by the defendant, Darragh, related not to the contract, but to the mode of performance. But the same ruling would have been made had the imputation of fraud reached both branches of the case. The state *121 ment of the learned chief justice that “the character of an action is determined by the complaint,” is true in reference to every form of action at law or in equity. There is no other test by which such a question can be determined.
The cases, cited at large in the brief, are of two classes, the one for wrongs, the other upon contracts. As to the first class, it it well settled upon principle and under the statute, that a reference can not be ordered. The issue as to the wrong, whether arising from a willful act or from mere negligence, must be tried by the jury. As to the second class,—actions on contract,—the power to refer is limited. There must have been an account, not collaterally, as in some of the cases, but directly between the parties, as for property sold, or services rendered by the plaintiff to or for the defendant. This necessarily excludes insurance cases. One claiming under a fire or marine policy must prove his damages, the amount of his loss, and may have occasion to exhibit an account made up of items. But the property lost or destroyed had not been sold to or received by the insurance company. The contract was not in its nature as for a mere purchase, but to indemnify the assured. So, too, in the case of an alleged partnership, where, by the pleadings in the action, the plaintiff affirms, and the defendant denies the existence of that relation, a reference or accounting will not be ordered until that relation is established. The reason of this rule of practice is, that the subject matter of the action is a fund in the use of which the plaintiff claims to be interested, to a portion of which, as net profits, he asserts title, and that, unless such claim be just, the defendant’s books, accounts, and assets, his sole property, should not be exposed to the scrutiny of the plaintiff, of his attorney, or of a referee. Some merchants in good standing might be ruined by such an inquisition.
*122 The questions of law involved in the case, and which may arise on the trial, are, in my judgment, very simple, not likely to be misapprehended by any person of reasonable capacity and intelligence.
In view of the cases cited, and of the well known practice, I do not find anything to deter me from entertaining this application. The questions are: first, is the case legally referable % and, if so, secondly, would it be a fair exercise of discretion to grant the order %
The contract, made part of the complaint, appears to have divided the work into about thirty different classes, so that the prices of each part could be fixed. Not that the thirty or more classes of work are so many mere items of an account; each class is made up of more or less items. It cannot be said how many items the account would contain if presented in form, but they would be several hundred, it may be several thousand, in number.
To establish their claim under these pleadings the plaintiffs would be required to prove the measurement or quantity of each class of work and of the materials. That proof the defendants could controvert. The inquiry would be, how many cubic yards of earth were excavated, and how many were hauled, how many piles were driven, how many yards of clay were supplied, and of puddle and of concrete were prepared, of brick and of stone work were built, and so on throughout the work alleged to have been performed in the years 1872, 1873, 1874 and 1875. It would be utterly impossible for a jury to pass upon those and the like questions intelligently; to get at the extent of each branch of the work, according to the weight and balance of the testimony; affix the price, and so determine the claim, whether in the aggregate exceeding what has been paid or not. Most counsel of much experience will be able to recall cases much less complicated than this, where, after proceeding before the *123 jury, the presiding judge, from mere necessity, stopped the trial and ordered a reference. In one case of this character, before Judge Edmoítos, an intelligent juror, as if in the agony of apprehension, arose, and declared his inability to hold in mind the particulars of the case. Our system of references was devised, and is well adapted, to relieve the jury from such intolerable burdens, and to secure the rights of parties from the errors or blunders unavoidably incident to the enforced submission of such cases to a jury.
This case, in its nature and in its details, has all the elements required by the practice, to justify a compulsory reference; it is on a contract—a mere money demand—and the trial will involve the examination of a long account, arising directly between the parties.
It is apparent that I would not be justified in denying this application on the plea of the discretion which in some cases may be properly appealed to. That would be treating as naught the statute and a well settled and well sustained system of practice. The discretion to be exercised is that which is governed by settled rules and principles of law. I know of none other. Can or should I hold that issues which cannot be tried before a jury, may not be tried before referees, and thus in effect determine that a suitor shall not have his cause tried at all ? Why should not this case take the course necessarily taken in other actions where accounts are involved ? Each of these litigants thus will ■ have the benefit of the only method by which their rights can be determined with clearness and certainty.
It is proper to observe that the circumstance that the attorney-general, represented by Mr. Parsons, has brought an action against these plaintiffs, under a recent and special statute, is of no interest to us. We cannot shape the business of this court, or dispose of cases which, in the due and regular course, we are bound to hear, upon any such ground. Nor would the *124 attorney-general or the learned counsel, acting with him, think well of any evasion of duty on our part, if we were disposed to indulge in it. It is sufficient that the other suit is not, could not be, pleaded in bar of this action.
It is proper also to observe that, in the view of the learned corporation counsel, “this court is limited to the consideration of the complaint and answer for the purposes of this motion” and of the affidavits. That view is correct. No offer to so stipulate as to involve less inquiry into the state of the accounts, or to fix upon a special mode of trial, or to qualify the pleadings, was made. Mr. De Witt does, however, in his affidavit, make some intimations of a pacific character; “He is not able now to say positively that any questions of measurement of excavation, upon which plaintiffs received large sums of money, will be raised on the trial of this case, as such question is now undergoing an examination,” &c. He also thinks that the charge of about $100,000, for what is called the “extra haul, is not put in dispute, so as to require minute examination,” &c., a concession that some examination will be required. Why % Simply because the amount of the work, and the distance each load was hauled, are in dispute. But I appreciate the learned counsel’s sense of duty, his conviction that it might not be wise or proper to abandon any part of the case made by the answer put in on the authority of the chief magistrate of the city. He has preferred, and, I think, very properly, to stand on what may be his legal rights.
No intimation has been made as to the referees to be appointed. I am thus left to make the selection. The persons appointed should be of such standing, character, experience and capacity, such known industry and thoroughness in the discharge of duty, as to command general and unqualified respect. With these views, and passing over some citizens to whom, as I *125 infer, the labor might not be agreeable, I appoint Hon. John A. Lott, G-eorge H. Fisher and Thomas H. Rod-man, Esquires, as the referees.
The order will be settled on notice.
¡No appeal was taken.

 But see Schermerhorn v. Wood, 4 Daly, 158.