Van Brunt, J.
In view of the magnitude of the interests which are necessarily involved in this case, it may not be improper for me to state a little more in *56 detail than nsnal the considerations which have led me to the conclusion which I have come to upon the motion to dismiss the complaint in this case. We find that the government of the city of New York is made 'up of a series of independent departments, none of which are answerable to any given head, and are supreme to a very great extent within the range of duties which are confided to them for execution. We find a police department, a fire department, a department of public works, department of docks, finance department, board of education, commissioners of charities and correction, and I don’t know but what there are more of the departments in the city of New York which are entirely independent governments in themselves, governed by certain rules which are applicable to each individual department, and which have no relation to one another, and not answerable to any other department, or any one official head.
[After some remarks upon the evils of this system, the learned judge continued as follows :] Among those departments is the department of docks. We find that the department of docks has certain duties which are confided to it, namely, the construction of the piers and bulkheads of the city of New York, which are necessary for the commerce of the city. They have also confided to them the repairing of piers and bulkheads, and the dredging out of slips, and at the time this new department was instituted, it was intended that there should be a new plan, or a permanent law for the improvement of the water front of the city, devised. As a result of that idea, when the department of docks was first instituted, that plan was infused into the system of the department of docks. I think it was under the charter of 1870, * that such a department was brought into existence. It had then very limited *57 powers, and it derived all the powers which it had, from the commissioners of the sinking fund, who could devolve upon the commissioners of docks such powers as they saw fit, for the purpose of carrying out the intention for which it was organized.
We find that within a month after that, in the same year, anew, separate, and independent act was passed* which brought the department of docks from this infantile condition into a full-grown department, and we now see entirely new duties confided to that department. They were made an independent department, consisting, if I recollect right, of five members. They were to have control, not only of the repairing of the old works in relation to the docks and bulkheads, &c., in the city of New York, but were to organize a definite plan for the carrying on of those improvements, whereby the water front of the city of New York might be so improved that it could accommodate the increasing commerce of the city. They were required to adopt a plan for the carrying on of this new work. That plan was to be submitted to the commissioners of the sinking fund, and when it was approved by them it was to be the plan according to which the improvement of the water front of the city of New York was to be conducted. We find, from the evidence in this case, that a plan was adopted by the dock department and submitted to the commissioners of the sinking fund, and adopted by them, and it was called the new plan ; — that the department of docks went to work, doing work of construction under this new plan ; — that in the course of the construction of that work, the department of docks made the contract which is now in suit; — that in the process of carrying out this alleged contract which was made with the plaintiffs in this action, a large quantity of material *58 was furnished to the department of docks, which was put into the construction of the docks that were being built under the new plan, as adopted by the department of docks, and approved by the commissioners of the sinking fund ; — that during the running of the contract, material was furnished for the carrying on of that work as it was called for ; — that during the progress of that work, the department of audit refused to pay Bigler & Co. the amount of money which the department of docks had certified to be due to them under this contract, and hence this suit. At the time at which this suit was originally instituted, and the time the answer was first put in, in this case, there was no question raised in regard to the legality of the contract. [Some discussion as to the decision on a former trial is here omitted, because it proved not material to the question now decided.]
Subsequent to the hearing of the case at the general term, the complaint has been amended, and the question has been raised by an amended' answer, as to the legality of this contract.
The complaint has been amended so as to cover not only a claim under the contract, but a claim on the ground of a quantum valebat, and the answer has been amended alleging fraud, and that the contract was illegal and had no legal existence, so as to found any liability upon it.*
That brings me to the consideration of the evidence as relating to that defense. We find the evidence to be this upon the part of the plaintiff. We find that prior to the time this contract was entered into, the commissioners of the dock department adopted a resolution, by which they provided that, as far as the work which was carried on upon the new plan was concerned, *59 the labor should be performed by day’s labor, and the material should be furnished by contract as far as practicable.
We also find that they have gone on, as I have already said, working under this new plan, making new constructions under this new plan, under that resolution, doing the work by day’s work and making contracts for the purpose of purchasing materials. The way in which the materials were furnished to the dock department, under that contract made with the plaintiff, seems to be this : That the engineer-in-chief, or the engineer in charge, certified to the dock department, what material would be wanted — coming within the terms of the contract. We find that then the treasurer of the dock department, if he was present, and if not, one of the commission of the dock department, issued a requisition upon Bigler & Co., and the timber was sent to the place designated by the requisition, and it was there inspected by .the official inspector of the dock department, and the timber was accepted as complying with the requisition, both in quality and dimensions, and was then put into these structures by the workmen employed by the dock department. It is to be borne in mind, that this timber put into these docks, consisted, if I understand it right, of that portion of the piers which was above the water, with the exception of the columns, which took the place of piles for the purpose of mooring the ships. Instead of using a single pile, they bound together 10x10 timber, and they were sunk, making piles twenty inches square, and some eighty or ninety feet long. Instead of being a single stick of timber, it was a number fastened together for the purpose of making this sort of a pile.
Upon that state of facts, the counsel of the corporation has moved to dismiss the complaint, and alleged several grounds of dismissal. One was, that upon the *60 cross-examination of Mr. Bigler, it has been established that he has not complied with the terms of the contract. That question should not be considered here. I do not think it can be entertained as a ground for a motion to dismiss the complaint, because the evidence itself is of such a character, that it must necessarily be submitted to the jury. There is nothing more analogous to this question, than that of the case of negligence. If there is any dispute on the question of negligence, it must go to the jury. If there is any dispute in regard to the contract being substantially carried out, that is a question for the jury to determine, and not the court. Therefore, that question cannot be considered on this motion to dismiss the complaint.
What are his grounds upon the question of the legality of the contract %
1st. That no full and minute specifications were made as the basis for the proposals for any of the work.
2nd. That even if the specifications were good, the advertisement was not for doing said work under said plan or plans.
3rd. That the proposals of the plaintiffs were not accompanied by any bonds of the form set forth in the specifications duly executed.
4th. The contract contained no provision as to time within which any work should be done or material furnished,- — but simply a time within which the department might make requisition for material. This was simply providing a time within which the commissioners of docks, by their private act, might purchase of the plaintiffs, materials at fixed prices.
5. The contract contained no provision for the retention of at least one-fourth of the contract price until the completion of the deliveries, as security for its performance.
6th. And no provision for the forfeiture of it for *61 non-performance. The requisitions were the private act of the treasurer of the department, or such individual commissioner as made a requisition upon the plaintiffs for material.
7th. No quantities annexed to the items of materials in the specifications, nor in the advertisement, nor in the contract.
8th. No quality of material specified in the contract.
Further, it is not in point of fact a contract for the purchase of material made after any advertisement and public letting.
No recovery can be had on bills not proved as having the certificate of Mr. Turner, the superintendent of repairs and supplies, there being no proof of waiver by the department.
In this designation of grounds, it would seem to have been the claim of the corporation counsel that the contract which was made with Bigler & Co., should accord with the requirements of the dock department law. He has raised, however, in his motion for a dismissal of the complaint, another ground, namely, that if it does not comply with the dock department law, and is- not governed by the dock department law, it is governed by the general law of the city of New York, regulating the entering into of contracts by the different heads of the department. That ground, it seems, is not at.all well taken. I think the regulation of any contract to be entered into by the dock department, is governed by the organized law of the dock department, and is exempt from any restrictions contained in the charter relating to other departments,* because the legislature has been particularly special in determining as to what the laws of the dock department shall contain, and this *62 must exclude all other legislation relating to that subject.
The answer which is made by the plaintiffs to this position of the corporation counsel, seems to be this, as I understand it. That under the resolution made by the dock department, or which was, as they claim, authorized by the act of 1871, to be made, the dock department, in the doing of this work, and in the purchasing of this material, were not governed by the rules or regulations of the dock department, governing the making of contracts. That by the resolution which they adopted, they were authorized to do this work by the day’s work, that they were authorized to purchase this material in anyway which they saw fit, and might make a contract in any way they saw fit, and neither the regulations embraced in the revised ordinances, nor the regulations embraced in the act regulating the power of the dock department, apply to a contract made in that way, because they had adopted a resolution certifying that they should do certain portions of the work by contract and certain portions by day’s work, and there are no provisions of the dock law that related to a transaction of that description. They also claimed that if there was no contract made, the dock department had a right to purchase this material in open market, and that any orders they gave to Bigler & Co., could be sustained by claiming he was entitled to recover upon the quantum, valebat, they having been ordered by the dock department in open market, which they had a right to do.
In order to consider these propositions it is necessary to look at the various acts by which the dock department came into existence.
The charter of 1870 * gave them very little power. We find that by the act of 1870,† their powers were *63 very much enlarged. We find, however, that by that act they were required, as far as the new plan work was concerned, to do all that work absolutely by contract, and.the kind of contract which was specified in the act which gave them these additional powers. It was undoubtedly found that such a cast-iron system of contracts in regard to the construction of this new plan work was not that sort of a system which was to carry on the department successfully; consequently, in 1871,* that portion of the law regulating the dock department was amended. Under the act of 1870, that portion of the law which authorized this work of construction under the new plans, read as follows :
“ The work of such construction, under said plan or plans, shall be performed by contract, as follows.” It then goes on and designates that there shall be certain specific plans that shall be first made, and then advertisements for proposals shall be made, giving those specifications, and the contract shall be made in accordance with those specifications, and providing for certain other particulars, in accordance with which the contract must necessarily be made. Now, in 1871, as I say, probably it being found that by such a cast-iron contract system it was not possible for the work of the construction of the new plan to' be carried on, that portion of the section was amended to read as follows :
“The work of such construction under said plan or plans, unless ordered to be otherwise performed by the affirmative votes of four members of the board, shall be performed as follows.” And then follow the same provisions in regard to the form of the contract and proposals, and plans and specifications as existed in the act of 1870.
In other words, the alteration seems to have been *64 that the department of docks could, by an affirmative vote of four out of five members of the board, designate how the work could be done otherwise than by contract, if they thought the necessities of the case required it.
In pursuance of the powers which were granted to them by that act, we find they adopted the resolution which has been testified to by Mr. Westervelt, namely: that they resolved that the work for these piers, at least that, as far as the work upon these piers was concerned, the labor should be done by day’s work, and the material furnished by contract. I don’t think the necessities of this act require that the general resolution in regard to all the work, was necessary for the board to act upon. They could say: “We will construct the piers in a different way from that which the law requires,” because, I suppose, that would be a compliance with that designation; the law does not require that they should construct all the piers in the same way. But I think the construction of this act requires this to be said : that after they have adopted one system of construction in regard to one particular part of the work, their power of designation is gone ; that is to say, if they have, under this provision, directed the work to be constructed by day’s work, as far as the labor is concerned, and by contract, as far as the material is concerned, they have designated the way in which the work is to be performed, and they cannot exceed it.
Therefore, there cannot be any change, as far as any particular structure is concerned, by the dock department, in the system of work. They must determine how it is to be constructed beforehand, and, having so determined, they must carry out that plan, and construct it in accordance with that plan, whatever it may have been, either according to the law, or according to the plan which they may have determined upon, *65 that it shall be otherwise than that designated by the law. We find that nnder the assessment law of the city of New York, the corporation either has the right to raise the money beforehand and do the work, or do the work and raise the money afterwards. The court of appeals have held, that if they commenced the work in that way, they must complete the work before they attempt to levy an assessment, or if they levy an assessment they must collect it first, and then do the work, and if they attempt to levy an assessment before the work is finished, they having determined that the work shall be done in that way, namely, the assessments levied afterwards, that it is a defense to any proceeding for the purpose of collecting assessments.*
*66 Now, then, the dock department having determined as to the way in which this work should be done, there is no power of alteration ; they must go on and finish it, they having exhausted the powers which the law gave them.
That brings me to the direct consideration of the question involved in this question. We find the dock department has determined by their action, that the work upon these piers shall lie done by day’s work, and the materials furnished by contract. Now, what is meant by that ? And there is the only difficulty there is in this case. What rule in regard to the making of contracts, is to apply to a contract of that description ? It will be seen, by an examination of the act specifying the particulars of the contract, what it is necessary the plans and specification should contain ; that it would seemingly be intended to apply to the whole structure, not only to the work, but to the work and material, both. It was claimed on the part of the counsel for the plaintiff, that the use of the word “work,” might relate only to the labor, but I don’t think any such construction could be placed upon it. The use of the word “ work,” means the whole structure. When you talk about the work on the piers, to make a contract in regard to the piers, means the work and materials for the piers, for the whole structure, and that seems to be the idea in fixing the regulations as applicable to the contract, for the work to be performed under this contract. Now, by the regulations of the dock commissioners they took the labor out of the act. Did they leave the material in it % It seems to me they did. It seems that is the only construction which can be placed upon their acts. They are author *67 ized to take as muck as they please out of the contract system. Whatever they leave in the contract system, that is to be governed by the rules and regulations of the law regulating the contracts of the dock department. Unless that is so, there is no provision of law to regulate what contract shall be made by the dock department. The theory of the law is, that there shall be certain regulations in regard to the contract system of the dock department, because they have specified that where the work is to be done by contract, it means the doing of the work and the furnishing of the material, and where it is done by contract it shall be preceded by certain preliminaries, and those preliminaries must be fulfilled in order that the contract shall be a valid one. The law originally required everything to be done by contract. The law of 1871 has said : “ You may take out of this contact system whatever you think the necessities of the dock department require.” It seems to me that leaves in the contract system that which remains, and which must be construed in accordance with the provisions of the law regulating the contracts of the dock department. Therefore, that would leave this case precisely in this condition, that the contracts to be made must conform to the general provisions of the law regulating contracts to be entered into by the dock department, and that is, that there shall be full and minute specifications for such work. The labor having been taken out, it leaves the material in, and that there should be full specifications for the material to be furnished, and that the advertisement for the procurement of certain materials shall be in accordance with certain specifications, and the proposals for such material shall be sent to the board within such time as is specified by the advertisement, accompanied by a bond; that the board should open the proposals, and examine them, and award the contract to the lowest bidder complying with such *68 plans and specifications, and then the contract should contain this provision, that they shall retain one-fourth of the contract price until the completion of the deliveries, as security for its performance, and it shall be in accordance with those plans and specifications.
Now, if that is true, the contract in this case does not accord with the provisions of the law. It may be a curious thing, but the fact is, that in regard to this contract, after it was entered into by Bigler & Co., the city could not have been held for a single dollar, nor could Bigler & Co. have been held for a single dollar. If the city made a requisition for any amount of lumber on Bigler & Co., and they refused to furnish it, they could not be held for a dollar. That is the condition of that contract, and upon my calling attention to the terms of the contract, it will be seen that the contract is particular, to determine what the penalty for default upon the part of Bigler & Co., shall be, and what is it ? That the city shall be able to deduct from anything that might be due to Bigler & Co., whatever the material would cost in case they went out in the market and bought it. Suppose, after the contract had been given to Bigler & Co., they refused to furnish a stick of timber, that they could not do it and make any money by it, where would there be any cause of action against Bigler & Co., for any damage that the city might sustain? They could not recover a cent, because there was nothing due them, and suppose he got half way through the contract, and got one-half of his money, and they made an order upon him for lumber, and he said he would not deliver any more, they could not deduct anything from him because there would be nothing to deduct from ; therefore, as far as the question of contract is concerned, it was no contract at all. The city was not bound to order, nor were Bigler & Co. bound to furnish, a stick of timber.
*69 We find, in regard to this contract, that there were no plans and specifications as required by the provisions of the dock law, that the contract was general in every particular, that there was no way in which there could be competitive bidding, for the reason that we find no amount is specified ; certain qualities of timber are specified, but there are no quantities, no amount of any kind specified, so that there could be a comparison of bids. If the contract system is to prevail (and it has been the theory of both the municipal and State governments that it should prevail), it is necessary the contract should be in such a form that there shall be what is called competitive bidding. Without intending to insinuate that anything of the kind has occurred in this case, I call your attention to the classes of frauds which might incidentally and very easily creep into a contract system of this kind. Here we find they specified white pine plank, to average forty feet long, five by twelve, at $40 a thousand. Suppose the bidder was in collusion with the engineer of the department, he could go to the engineer, and say : “ How much white pine plank do you think you will want ?” “Well, so much.” “Now, I see down here there is some other kind of plank ; how much of that will you want furnished ?” “Well, we will want very little of that.” What is the result? He puts a high price upon that of which they want a good deal, and a very low price upon that which they want very little of ; and another man bids conscientiously — supposing they want an equal quantity of the same character, and puts reasonable prices to each class of lumber, and he averages his prices accordingly. How are you going to compare those bids? You foot up so many pieces at so much per thousand, and you will find that one will be lower than the other. When it comes to be filled, the first will be found to be an infinitely degree higher than the other, a fact which would be known to the *70 officers of tfie department in consequence of tfieir knowing how tfie work will be carried on, and wfiat proportion of tfie timber of tfie various classes would be furnished. There cannot be any competitive bidding in a contract of that description. It is for that reason that in laws regulating contracts, there has always been a determination upon the part of the legislature, at least, to see that the contract shall be specific in regard to quantities, and unless it is specific in regard to quantities, there cannot be any comparison of bids.
It seems to me that this contract must be governed by the law regulating the dock department, that it does not comply with the dock department law, and that it is illegal and cannot be enforced.
In regard to the question of quantum, meruit, I have said that could not be considered in this case. It has been claimed that the city of New York has possession of these materials, that it comes within the case of Nelson v. Mayor,* which was a case of an assessment that was levied, and the money was in the city treasury to pay it, and the contract was sought to be defeated on the ground that the contract was illegal in consequence of failing to comply with certain requisitions of law. The court in that case held, the city could not get the money to pay the contractor out of the citizens and then refuse to pay the contractor.
How are the facts in regard to this case ? These piers were erected. It was offered to be proved, and we must assume the fact, for the purpose of this question, that the city did realize a rental from those piers, but the rental is not money which is raised for the purpose of paying the contractor for the labor and material which he had furnished for the work, and, therefore, it is to be distinguished from the case of Nelson
*71 v. Mayor. The United States supreme court decided pretty squarely within a short time the question of quantum meruit, and that was in the case of a contract with one of the departments of the United States government where certain materials were furnished and certain work done in pursuance of a contract, and there was not any appropriation to pay the contractor, and the provision of the law* was, that there must be an appropriation before the contract could be made. The court of claims allowed the contractor to recover upon the ground of a quantum meruit. The supreme court of the United States reversed that judgment, 'holding that the contract was utterly void ; that the contract being utterly void, although the United States had possession of the materials, and was using them, there could not be any recovery on the quantum meruit, because the department had no power to incur a debt except in the manner provided by law, and that the law required an appropriation before the debt could be incurred, and that the debt should be incurred in a certain way, and that process not having been followed, there could be no recovery for the amount of material furnished ; holding that if a contract was required there could not be a recovery for the material furnished; thereby establishing the principle which is necessary to be established in order to govern this question, namely, that if a contract system is to be established, the recovery is to be upon the contract, and cannot be in any other way, because if so, the contract system is necessarily abolished.† If a man can make a contract with the city of New York, in violation of law, and the contract be void, and he then can recover upon the quantum meruit, the restrictions *72 thrown aro and making a contract, are necessarily abolished by the action of the heads of departments which it is designed to restrict.
Therefore, if we come to the conclusion, that this contract must be regulated by the provisions of the dock law, there can be no recovery on the ground of the quantum meruit. I desire to state here, and to have it taken down as part of the record in this case, that the sole question which is decided here, is in regard to the legality of this contract, that no question has been passed upon in regard to the performance of the contract. [Further remarks enforcing this limit are omitted.]
Complaint dismissed.

 1 L. 1870, p. 378, c. 137, §§ 30, 99.

 L. 1870, p. 907, c. 383, §§ 32-44.

 As to this distinction, see Kingsley v. City of Brooklyn, 1 Abb. N. C. 108.

 See Guidet v. The Mayor. 13 Hun, 566, 568.

 1 Laws of 1870, p. 373, c. 137, § 99.

 1 Laws of 1870, p. 907, c. 383, §§ 32-44.

 2 Laws of 1871, p. 1335, c. 574, § 6.

 See Eno v. Mayor, &c. of N. Y., 68 N. Y. 214, rev’g 7 Hun, 320.
One who furnishes materials, &c., on a contract made without the preliminary certificates or advertisements required by law, cannot recover on the mere ground that the city has had the benefit of them. Though it may be otherwise, if the city has collected, by assessment, the money to pay for them. McDonald v. Mayor, &c. of N. Y., 68 N. Y. 23 ; Nelson v. The same, 63 Id. 535, rev’g 5 Hun, 190.
A county court made an order appointing a commissioner to let the building of a bridge to some contractor who would wait for his compensation “until the amount is received from the State out of the road and canal fund.” The commissioner let the contract to A., who entered into a bond which recited the order and contained an agreement “ on the part of the county court, as said court,” to pay a certain sum when the work was completed, provided that, “if there be not a sufficient amount of the dividend of the road and canal fund on hand, at the time of the completion of the bridge, the said undertaker is to wait on or indulge the said county, by receiving of said county as fast as said funds shall arrive.” When the work was completed, A. received a warrant on the county treasurer, “payable out of the road and carlal fund.” This was assigned to the plaintiff. Held, that the plaintiff could look only to the road and canal fund, and could not compel the county to pay out of its own proper funds. Pettis County v. Kingsbury, 17 Mo. 479.
Contracts for work, the expense of which is to be assessed, — Held, *66 not obligations of the city within the meaning of clauses restricting the amount of its obligations. Baldwin v. City of Oswego, 1 Abb. Ct. App. Dec. 62.

 63 N. Y. 535.

 See act of Congress of 1820, § 6, 3 Stat. at L. 568.

 Compare Clark v. U. S. 95 U. S. (5 Otto) 539; and Hawkins v. U. S., 96 Id. (6 Otto) 689.