AMELIA GROVES AND THOMAS H. GROVES, RESPONDENTS, *v.* THE CITY OF ROCHESTER, APPELLANT.

*Municipal corporations — liability of, for the negligence of boards charged with administrative duties — damages — when a verdict will not be set aside as excessive.*

On November 10, 1882, the executive board of the city of Rochester, acting under a resolution of its common council, awarded a contract to one Clancy, for extending a Holly water-main in one of the streets of the city. Clancy, under the supervision of the superintendent of the city water-works, and pursuant to the directions of the executive board, immediately commenced work, and on that and the following day had made an excavation in the said street between the sidewalk and the westerly side of the tracks of a horse railroad company, and also a second excavation crossing the first and intended to be used for connecting the water-main with a hydrant to be placed in the sidewalk. On the night of November eleventh, the plaintiff, while walking in the street, and exercising due care, fell into the second excavation, which had been left open, unguarded and without light, and sustained injuries to recover damages for which this action was brought against the city of Rochester.

*Held*, that the city was chargeable with the negligence, if any, of the executive board, and that if such negligence were shown no notice to the city of the existence of the obstruction need be shown.

That the fact that at the time of the accident the contractor had failed to comply with certain of the provisions of the charter, compliance with which was required to make the contract binding upon the city, did not relieve the defendant from liability.

The plaintiff was, at the time of the accident, twenty-eight years of age, and had been, up to that time, remarkably healthy and active. Her injuries were severe and her sufferings very great. She still suffered from the effect of the injuries when the trial was had, and the opinion of physicians was that she might never fully recover therefrom, and that her life might be materially shortened thereby.

*Held,* that a verdict of $19,000 would not be set aside as excessive.

APPEAL by the defendant from a judgment, entered upon verdict at the Monroe Circuit, and from an order denying a motion for a new trial on a case and exceptions.

The action was brought to recover for personal injuries sustained by the plaintiff Amelia Groves, wife of the plaintiff Thomas H. Groves, alleged to have been occasioned by the negligence of the defendant. The plaintiffs recovered a verdict of $19,000.

*J. D. Beckley,* for the appellant.

*John D. Lynn* and *Thomas Raines,* for the respondents.

BRADLEY, J.:

On the night of November 11, 1882, while walking northerly on the west side of North St. Paul street in the city of Rochester, the plaintiffs came to an obstruction produced by a pile of earth on the sidewalk, and turned out on the street side to pass around it, and in doing so the plaintiff Amelia fell into a trench then recently dug there and was severely injured. This constitutes the cause of complaint and of the action.

The common council of the city adopted a resolution authorizing and directing the executive board to extend a Holly water main in North St. Paul street from Atwater to Lowell street, pursuant to which the contract to do the work was by the board awarded to David Clancy on the tenth day of November, who immediately, under the supervision of the superintendent of the water-works of the city, and by direction of the executive board, proceeded with the work. And on that and the following day, made the excavation which produced the obstruction of the sidewalk and the trench in question. The situation before the excavation was such that four

feet east of the sidewalk was the west track of a street railway, and four and eight-tenths feet west of the walk was a street fence.　The trench — parallel with the walk, and between it and the railway, and nearly two feet from the latter — extended from its south end northerly six feet, where it intersected a trench at right angles with it of seven and two-tenths feet in length, extending west from within nine inches of the rail of the railway and about four inches from the timber upon which it rested.　This trench extended upwards of three feet into the sidewalk.　The trench was five feet deep, and the earth excavated to make these two lines of trench was thrown out upon the walk, producing an obstruction which extended to the fence.　When the plaintiffs approached this heap of earth on the walk, they turned easterly into the street to get around it, and Mr. Groves went upon the railway track, and his wife, to his left, walked by his side, on the outer and west side of the rail, until she reached the point where the cross-trench approached near to the railway, when she suddenly fell into it and received the injury. This occurred about eleven o'clock at night.　It was very dark, and there were no guards placed there, and no lights in that locality to in any manner warn or advise persons passing along there of any interruption or danger further than might be furnished by the earth piled upon the sidewalk.　The evidence justified the conclusion of the jury that the plaintiffs were free from any contributory negligence.

While conceding that the duty is upon the defendant to keep its streets in safe condition for the public use, and that it may be liable for the consequences of its negligence in that respect, it is contended by the defendant's counsel that the defendant was not chargeable with the results of the action and direction of the executive board, but that its liability was dependent on notice of the dangerous condition which had been thus produced and to which the public travel on the street was exposed, and that until the fact of such notice was found, arising from lapse of time or otherwise, the defendant was not chargeable with negligence or liability.

This proposition and contention are placed upon the ground that the executive board of the city is not the agent of the defendant, but an independent body having its duties, for the manner of performing which the defendant is not responsible to third parties affected by it.

The city charter provides for the election of an executive board to consist of three persons (Laws of 1880, chap. 14, §§ 142, 143), with power to let all contracts to be made by the city pursuant to ordinances, except such as are by law directed to be otherwise made, and that the board shall superintend their execution, and shall have the superintendence and control of all work and improvements ordered by the common council, and have control of the construction, improvement, repair and cleaning of streets, etc., and that they shall be the commissioners of highways of the city. (Id., § 149.) The board shall have control of the water-works of the city and of the construction of all extensions, additions, improvements and repairs of the same, and of furnishing water to citizens and the care and repair of such works. (Id., § 150.) They shall also have the care and control of the fire department of the city (Id., § 151), and may employ assistants (Id., § 152), and may enter upon any street, etc., for the purpose of laying down pipes for the conveyance of water, or constructing, repairing, altering, maintaining or extending any portion of the water-works, and for such purpose may carry or conduct any pipes or other work over, under, through or across any street in such manner as not to unnecessarily obstruct the travel, etc. (Id., § 157.) The streets and places of extensions and additions of water-pipe shall be, from time to time, recommended by the executive board to the common council, who shall have power to approve or alter the same, and the same shall not be otherwise constructed than as determined by the common council. (Id., § 155.) And the lawful expenses of the board and all demands lawfully contracted shall be paid by the common council, etc. (Id., § 148.) The municipal corporation is the city of Rochester. The common council are vested with the legislative and much executive power of the city, and have the management and control of its fiscal and prudential affairs and of all its property. The executive and administrative powers and duties are so distributed as to be placed in what may be designated departments, within which all respectively co-operate in conducting the municipal affairs of the city. This is a statutory system of organization to execute the powers and carry on the business of the corporation. The executive board is one of the instrumentalities employed for those purposes. Whatever is done by this board, within its legiti-

mate powers, of those things embraced within the corporate powers of the city, is the act of the latter. And the executive board in such case is deemed the agent or representative of the defendant, as distinguished from the character of a public officer as such. (*Conrad* v. *Ithaca*, 16 N. Y., 158; *Ehrgott* v. *Mayor*, 96 N. Y., 264, 273.) The rule is otherwise in respect to powers and duties of a political or governmental character which are vested by the statute in officers or departments in a municipal corporation for the public good, and those powers and duties not placed upon it, but upon the officer or department, and for the benefit of the public, as distinguished from that of the corporation. Their relation, then, is so far independent of the corporation that they are deemed public officers, and it is not chargeable with their action or negligence in the performance of the duties vested in them. (*Maxmilian* v. *Mayor*, 62 N. Y., 160; *Tone* v. *Mayor*, 70 id., 158; *Ham* v. *Mayor*, Id., 459; *Smith* v. *Rochester*, 76 id., 506; *Bigler* v. *Mayor*, 5 Abb. N. C., 51; *Bamber* v. *Rochester*, 26 Hun, 587.)

The work of making the trenches in question was solely for the purpose of extending the supply of water, and the lateral trench cut across a portion of the street and into the sidewalk was evidently to lay a pipe to a hydrant, and was legitimately within the power given by the statute. It is insisted that the water-works and their extension are under the control of the executive board, not as agents of the city, but as public officers clothed with power, and that as the lateral, which caused the plaintiff's injury, was made to carry water to a hydrant to supply water to extinguish fires, they were acting in a public and independent capacity and not in one subordinate to the corporation and its powers; and further, that the city is not charged because no contract with it had then, in fact, been made to do the work. The work was awarded by the executive board to the person who did the work, but no written contract had yet been made. The water-works system is the property of the city for its purposes and for the extinguishment of fires and for the supply of pure and wholesome water to its citizens. As has been observed this board has the power to let all contracts in pursuance of ordinances of the common council; and the statute provides that when made the contractor shall execute to the city a bond or undertaking, etc., and until that is done no contract shall be binding on the city. (Sec. 168,

sub. 6.) The relation of the defendant to this work, as against the plaintiffs, did not require the existence of a contract, binding upon it, with a contractor to do it. The work of cutting trenches for and laying the water-pipes in the streets of the city, to thus provide the means of supply, we think is within the corporate power of the city. In this instance the executive board, pursuant to an ordinance of the common council, had awarded the contract, and it was under the direction of the board that this work was done. We think this work was a corporate act of the city, and that the executive board in causing it to be done represented the defendant and acted as its agents. The executive board were also commissioners of highways of the city, and in that capacity represented it in its corporate power and duty of keeping the streets in such condition and repair as to give safety to the public travel in them. And in connection with the work for the other purpose, was the accompanying duty of the board to not unnecessarily impair or render dangerous the proper use of the street by the traveler. It is the performance of the latter duty that is in question in this case. It follows that the defendant was chargeable with the negligence of the executive board, and that if such negligence caused the injury, there was no question of notice to the defendant for the consideration of the jury. (*Sewell* v. *Cohoes*, 75 N. Y., 45; *Brusso* v. *Buffalo*, 90 id., 679; *Ehrgott* v. *Mayor*, 96 id., 264, 273; *Russell* v. *Town of Columbia*, 74 Mo., 480; S. C., 41 Am. R., 325 )

That the plaintiff's injury was occasioned by the work of excavation so made in the street and walk, and leaving it unguarded and without light to guide the way of escape from danger, is well established by the evidence, having in view the darkness at the time of the accident. The question whether the executive board was advised of the situation was left to the jury, although their direction caused the work to be done, and it was in fact done under their supervision, through the person employed by them.

The defendant's counsel contends that the court erroneously charged the jury, as matter of law, that the city was guilty of negligence and liable. The court charged the jury in that respect that "where an excavation is made under the direction of the city and is left unguarded, that is sufficient to render it liable for resulting injuries. Nevertheless, persons passing along must exercise due

care. * * * But if a person with ordinary prudence and caution passing along the street without any notice of the obstruction * * * exercises fair prudence to avoid it, and is injured, the city must respond. This place, it is shown, was not lighted; it was not guarded; there were no lamps in a long distance. * * * That night was very dark. * * * If you shall say that the place was not properly guarded and that this lady exercised proper care for her own protection, you will come to the subject of damages." The charge as made, as a whole, does not fairly support the assumed basis of the contention. The omission of the defendant in some manner to guard an excavation made by its direction in a street of the city would be negligence, if in consequence a person traveling there and using due caution was injured by it, and liability would result for the injury so received. The remark of the court that it was not guarded was made in reference to the fact that there was no light to expose the situation, which is not questioned, and finally it was, in effect, left to the jury to say whether the place was properly guarded. The only fact for the jury in that respect was whether, under the circumstances, the obstruction on the walk, and the situation there as they appeared when approached by the plaintiff in the darkness of the night, were such as to advise a person using due caution, that it was not prudent to go around it as she attempted to do. There was no request to submit any question in that respect to the jury. And it is not apparent, in view of the evidence, that such request and charge would have been of any value to the defense. That question was substantially embraced in the charge in respect to the required care and caution on the part of the plaintiff to support the action. We think there was no error in the portions of the charge to which attention is called by the exceptions taken. The question of negligence is usually one of fact for the jury, as is also the further question (if negligence of defendant is found) whether the injuries were caused by it.

We observe no disregard of that rule by the trial court. If anything further for the consideration of the jury was desired, it could very properly have been suggested by request to charge. We cannot say that the verdict was excessive in amount. The plaintiff, at the time of the injury, was twenty-eight years of age;

and the evidence tended to prove that before and up to that time she had been remarkably healthy and active. Her injuries were severe, and her suffering has been very great. She still suffers from the effect of them, and medical opinion is that she may never fully recover, and that they may materially shorten her life.

None of the exceptions seem to have been well taken, and no substantial reason appears for a new trial.

The judgment and order should be affirmed.

SMITH, P. J., and BARKER, J., concurred.

Judgment and order affirmed.