## Loomis v. Brown County.

1. Where a county has no liquor prosecution fund, authorized by Laws 1890, Chap. 101, § 12, requiring all moneys collected in liquor prosecutions to be paid into the county treasury and kept as a liquor prosecution fund, and authorizing the county attorney to draw warrants thereon for expenses actually and necessarily incurred in securing testimony in enforcing the act, the county is not liable on warrants so drawn; the county attorney having no authority to draw such warrants.

2. An assignee of a county warrant is in no better position in enforcing payment against the county than the original holder.

(Opinion filed July 2, 1902.)

Appeal from circuit court, Brown-county. HON. A. W. CAMP-
BELL, Judge.

Action by E. Loomis against Brown county on liquor prosecu-
tion fund warrants. From a judgment for defendant, plaintiff ap-
peals. Affirmed.

The facts are stated in the opinion.

*S. H. Cranmer,* for appellant.

*J. H. Perry,* for respondent.

CORSON, J. The plaintiff filed his petition with the board of
county commissioners of Brown county, in which he alleged, in
substance, that during the years 1891 and 1892 S. H. Cranmer was
the duly elected and acting state's attorney for said Brown county;
that on the 17th day of August, 1891, the said Brown county was
justly indebted to one J. W. Reed in the sum of $9.90 for services
as a witness and securing testimony in a certain case pending in said
county, in which the said State of South Dakota was plaintiff and
R. E. Mauke was defendant; that said action was brought by the
said state's attorney under the provisions of chapter 101, Laws 1890;
that on the said 17th day of August, 1891, the said S. H. Cranmer,
as such state's attorney, issued to said Reed the following order,
addressed to the county treasurer of Brown county: "Pay to J.
W. Reed, Esq., or order, nine dollars and ninety cents ($9.90),
for services securing testimony in the case of the State of South Da-
kota against R. E. Mauke, out of money in your hands belonging to
the liquor prosecution fund." that thereafter, for value, said warrant
or order was duly sold and assigned to this plaintiff; and that this
plaintiff has ever since been, and now is, the owner and holder there-
of. The petition then proceeds to set out a number of other orders,
drawn in a similar manner, to different parties, amounting, with in-

terest, to $718.67, all of which were duly assigned to the plaintiff. It is further alleged in said petition that said warrants were drawn by said state's attorney separately upon the "liquor prosecution fund." It is further alleged that on the 29th day of April, 1893, each and all of said warrants were duly presented to the county treasurer of said county, and were indorsed, "Not paid for want of funds," and each was registered in the office of the county treasurer before mentioned for payment. It is further alleged that there are no funds in the hands of the county treasurer of said county belonging to the liquor prosecution fund, nor have there been any for several years, and that the law creating said fund has been repealed. It is further alleged that on the 9th day of March, 1899, a hearing on said petition was had before the said board of county commissioners, and the following action was taken, to-wit: "On motion the petition of E. Loomis for the payment of certain warrants was rejected." Thereupon the plaintiff appealed from said action of the said board of county commissioners to the circuit court, where the same was tried in August, 1899, by the court without a jury. Upon the trial in the circuit court, the court made findings of fact and stated conclusions of law sustaining the action of the board of county commissioners, and from the judgment rendered thereon plaintiff has appealed to this court.

The court's findings were substantially as follows: That during the term of office of the said S. H. Cranmer as state's attorney for said Brown county, he drew the several warrants mentioned in the complaint in this action, and that the said warrants were drawn on the "liquor prosecution fund," and that the said plaintiff is the holder of the said warrants; that at the date of the several warrants there was not, nor has there since been, any fund known as the "liquor prosecution fund" in the office of the county treasurer of said

county, nor that there was at the date of said warrants, nor has there since been received by the treasurer of said county, any moneys derived from liquor prosecution under said chapter 101, Laws 1890. From the findings the court concludes that the warrants do not constitute a liability of the defendant county, and that judgment in bar should be entered against the plaintiff and in favor of the defendant.

It is contended on the part of the appellant that the conclusions of the court are against law, in that the legislature fully empowered the state's attorney to issue his orders on the county treasurer in payment for services rendered, and that the county became liable therefor; that the fact that they were to be drawn upon one particular fund did not relieve the county from its liability thereon. Section 12, Chap. 101, Laws 1890, provides: "It shall be the duty of the state's attorney to diligently prosecute any and all persons violating any of the provisions of this act in their respective counties  *  *  * and to pay all moneys so collected as herein provided into the treasury of said county; it shall be the duty of said treasurer to place said moneys in a special fund to be designated as the 'liquor prosecution fund' to be disposed of as hereinafter provided. Said state's attorney is hereby empowered to draw his warrants in each case separately upon such fund to pay the expenses actually and necessarily incurred by him in securing testimony for and in enforcing the provisions of this act." It will be observed that the state's attorney is only authorized to draw his warrants upon such fund for the expenses actually and necessarily incurred by him in securing testimony. The orders are not, as will be noticed, drawn against the county as such, but only against a particular fund. When, therefore, it was shown, as in the case at bar, that there was no such fund in the county treasury, and that there has been no such fund since these warrants were drawn, it is quite clear that the state's

attorney had no authority to draw said warrants. While the legislature might deem it proper to require that the moneys collected for violation of the act should constitute a fund for payment of expenses of securing evidence in cases prosecuted under the act, they evidently did not deem it proper to impose upon the county the burden of paying such expenses when there was no such fund on hand out of which to pay the same. The authority to draw the warrants, therefore, being a special authority, all warrants drawn by the state's attorney after the fund was exhausted were clearly invalid and not binding upon the county. This seems to have been the view of the learned circuit court. 4 Am. & Eng. Enc. Law p. 362; Moody v. Cass Co., 85 Mo. 477; Campbell v. Polk Co., 49 Mo. 214. In the latter case the supreme court of Missouri says: "The plaintiff, as assignee, sued Polk county on a warrant drawn on the 'internal improvement fund.' Upon the trial of the case it was proven that there was no internal improvement fund; that it had been exhausted; and upon this evidence the court found for, and gave judgment for, the defendant. The district court affirmed this judgment. The plaintiff was not entitled to recover on this warrant, as it was to be paid out of a specific fund which had been exhausted. The principles laid down by this court in Pettis Co. v. Kingsbury, 17 Mo. 479, are applicable in this case." The parties having accepted these warrants drawn upon a special fund, they could only look to that fund for payment. Plaintiff, as assignee, occupies no better position than the assignors, and is clearly only entitled to payment out of the fund upon which the warrants were drawn.

The judgment of the circuit court is affirmed.