Filed Feb. 4, 1892.

———

No. 302.

## PARK ET AL. *v.* THE BOARD OF COMMISSIONERS OF ADAMS COUNTY.

COUNTY.—*Negligence of Contractor.—Repair of Bridge.— Failure to Warn Travellers.—Liability of County for Injuries.*—Where a contractor employed by a county to repair a bridge negligently fails to place lights or barricades to warn approaching travellers of danger, the county is liable for any injury resulting.

From the Adams Circuit Court.

*C. M. France* and *J. F. France,* for appellants.

*R. K. Erwin* and *J. F. Mann,* for appellee.

NEW, J.—This was a claim, in the form of a complaint, presented to the board of commissioners of Adams county by the appellants against the appellee, to recover damages for alleged negligence in not properly guarding a certain bridge, at the time being repaired by one Joseph Hendricks under a contract with the appellee.

The board of commissioners allowed the appellants, on their claim, twenty-five dollars, and from this decision the latter appealed to the circuit court, where, to an amended complaint, a demurrer was sustained and exception saved.

Upon the refusal of the appellants to plead further, judgment was rendered against them upon the demurrer for costs.

The only question presented to this court upon the appellants' assignment of error is, whether the court below erred in sustaining the demurrer to the amended complaint.

Park *et al. v.* The Board of Commissioners of Adams County.

The substance of the complaint may be thus stated :

On the 19th of November, 1889, a bridge fifty feet long, over a water-course in Adams county, was under process of repair by one Hendricks under contract with the board of commissioners of said county, said bridge being upon a public highway in said county. On said day, at 9 o'clock P. M., when it was very dark, the appellants' hired hand drove their team of horses upon said bridge, and, not knowing its dangerous condition, attempted to drive across the same; that on the west side of said bridge, where said team entered, a plank floor had been laid for a length of twenty feet, and on the east side, for a distance of thirty feet, there was no floor whatever; that said bridge had been negligently left during said work of repairs, without any barricades or lights to warn travellers, and in consequence thereof, without any fault of the appellants, or their hired hand, when said team had been driven about twenty feet on said bridge, the horses stepped off and were precipitated to the ground below, a distance of seven feet, and were thereby crippled and the harness on them injured, to the damage altogether of two hundred dollars to the appellants.

The statute expressly places the duty of keeping bridges upon public highways in repair upon the several boards of county commissioners, and provides them with ample means for performing that duty. Therefore it is, that, under the rulings in this State, counties are held liable for injuries resulting from defective bridges. *House* v. *Board, etc.,* 60 Ind. 580; *Board, etc.,* v. *Emmerson,* 95 Ind. 579; *Abbett* v. *Board, etc.,* 114 Ind. 61; *Board, etc.,* v. *Pearson,* 120 Ind. 426; *Harris* v. *Board, etc.,* 121 Ind. 299; *Board, etc.,* v. *Sisson,* 2 Ind. App. 311.

It is also well settled that a traveller upon a street, or county public highway, without knowledge of defects in bridges forming parts thereof, and using proper diligence himself, has a right to presume that they are in a safe con-

dition, and to act upon that presumption. *Board, etc.,* v. *Legg,* 110 Ind. 479.

Is the county liable to the appellants upon the facts stated in the complaint?

It may be stated as a general rule, or proposition, that where the injured party attempts to recover for his loss, or injuries, against any other than he who is actually guilty of the wrongful act, it can only be on the ground that the relation of principal and agent, or master and servant, exists; and that, where the injury is done by a party exercising an independent employment, the person employing him is not liable. *Ryan* v. *Curran,* 64 Ind. 345; *Sessengut* v. *Posey,* 67 Ind. 408; *City of Logansport* v. *Dick,* 70 Ind. 65; *Hilliard* v. *Richardson,* 3 Gray, 349; *Linton* v. *Smith,* 8 Gray, 147; *Conners* v. *Hennessey,* 112 Mass. 96; *Clark* v. *Fry,* 8 Ohio St. 358; *Pfau* v. *Williamson,* 63 Ill. 16; *De Forrest* v. *Wright,* 2 Mich. 368; *Wray* v. *Evans,* 80 Pa. St. 102; *Allen* v. *Willard,* 57 Pa. St. 347; *McCafferty* v. *Spuyten Duyvil, etc., R. R. Co.,* 61 N. Y. 178; *Hexamer* v. *Webb,* 101 N. Y. 377; 1 Shearman & Redfield Negligence, sections 168, 273; Cooley Torts, 646; Wharton Negligence, section 818; 2 Dillon Munic. Corp., section 1028.

The general rule, as we have stated it, however, has well established exceptions. The rule, as given, will not apply where the work contracted for would be a nuisance or unlawful, nor where the contract directly requires the performance of work intrinsically dangerous, however skilfully performed. Where the particular thing which occasioned the injury results directly from the acts which the contractor agreed and was authorized to do, the person who employs the contractor and authorizes him to do those acts is equally liable to the injured party. In such cases the negligence is not that of the contractor alone; it is that of the employer also in directing him, by the terms of the contract, to do an act which in its nature was wrongful. And in such cases the person injured may sue either or both.

Neither can any one escape from the burden of an obligation imposed upon him by law by engaging for its performance by a contractor. Whatever he is bound to do must be done; and, though he may have a remedy against his contractor for the failure of the latter to discharge his duty, strangers to the contract are still at liberty to enforce the rights conferred upon them by the law without noticing the contract.

Thus, it is now the firmly established doctrine in this country that the duty of maintaining streets in towns and cities in a safe condition for public use and travel rests primarily, as respects the public, upon the municipal corporation to which they belong, and the obligation to discharge that duty can not by the corporation be evaded, superseded, or cast upon others by any act of its own. If such municipal corporation should so contract for work upon its streets that the doing of the work as contracted for would necessarily constitute an obstruction or defect in the street of such a nature as to render it unsafe or dangerous for the purposes of public travel, unless properly guarded or protected, the employer, equally with the contractor, where injury results directly from the acts which the contractor engaged to perform, would be liable therefor to the injured party. 2 Dillon Munic. Corp., sections 1018, 1027, 1028, 1029, 1030, 1037; Shearman & Redfield Negligence, sections 176, 297, 298; *Robbins* v. *City of Chicago,* 4 Wall. 657; *Water Co.* v. *Ware,* 16 Wall. 566.

In *City of Logansport* v. *Dick,* 70 Ind. 65, it was held that the city could not, by any contract it might make, avoid its liability to third persons for injury or death resulting from a breach of its duty in the care and control of its streets. See, also, *Grove* v. *City of Fort Wayne,* 45 Ind. 429; *Town of Centerville* v. *Woods,* 57 Ind. 192; *City of Crawfordsville* v. *Smith,* 79 Ind. 308; *Turner,* v. *City of Indianapolis,* 96 Ind. 51; *Glantz* v. *City of South Bend,* 106 Ind. 305.

It is clear, from the authorities cited, that the obligation

of a town or city to keep its streets in a safe condition for the passage of persons and property is a primary one, and the municipality can not divest itself of this duty.

It is also well settled by the greater weight of authority, that because of this duty to the public, a city or town, when having work done upon its streets or bridges, although by a contractor, is bound to see that such precautions are used while the work is in progress as are reasonably necessary to protect travel. No matter what kind of contract the city may make, nor with whom, it still remains charged with the care and control of the street in which the improvement, change or repair is being made, and it can not throw off its duty and the responsibilities through which that duty is to be enforced. 2 Dillon Munic. Corp., section 1027 ; *Storrs* v. *City of Utica,* 17 N. Y. 104 ; *Brusso* v. *City of Buffalo,* 90 N. Y. 679 ; *Circleville* v. *Neuding,* 41 Ohio St. 465 ; *City of St. Paul* v. *Seitz,* 3 Minn. 205 ; *Brooks* v. *Inhabitants, etc.,* 106 Mass. 271 ; *Groves* v. *City of Rochester,* 39 Hun, 5 ; *Wilson* v. *City of Wheeling,* 19 West Va. 323 ; *City of Jacksonville* v. *Drew,* 19 Fla. 106 ; *Dressell* v. *City of Kingston,* 32 Hun, 533 ; *Welsh* v. *City of St. Louis,* 73 Mo. 71 ; *Hawxhurst* v. *Mayor, etc.,* 43 Hun, 588 ; *Russell* v. *Inhabitants, etc.,* 74 Mo. 480.

And in such cases notice to the municipality of the absence of proper precautions or guards would not be necessary. *Brusso* v. *City of Buffalo, supra ; Brooks* v. *Inhabitants, etc., supra ; Ironton* v. *Kelley,* 38 Ohio St. 50 ; *Groves* v. *City of Rochester, supra ; Board, etc.,* v. *Pearson,* 120 Ind. 426.

The rules which we find thus laid down have no application of course where the Legislature has placed the duties of which we have spoken upon independent public agencies, to be exercised within the municipality, but independent of control by it. In such cases the agencies or officers so created and empowered are so far independent of the corporation that they are deemed public officers, and it is not chargeable with their action, or negligence, in the perform-

ance of the duties vested in them.   *Groves* v. *City of Rochester, supra; People, etc.,* v. *Walsh,* 96 Ill. 232 ; *Maximillian* v. *Mayor, etc.,* 62 N. Y. 160 ; *Towe* v. *Mayor, etc.,* 70 N. Y. 158 ; *Ham* v. *Mayor, etc.,* 70 N. Y. 459 ; *Smith* v. *City of Rochester,* 76 N. Y. 506 ; *Bigler* v. *Mayor, etc.,* 5 Abb. N. C. 51 ; *Bamber* v. *City of Rochester,* 26 Hun, 587 ; 2 Dillon Munic Corp., section 974 ; *Abbett* v. *Board, etc., supra; Union Civil Tp.* v. *Berryman, ante,* p. 344.

We can see no reason why the principles and obligations which we have found to be so firmly placed upon towns and cities, as to streets and bridges within their limits, do not rest with like force and weight upon counties as to bridges constituting parts of public highways within the boundaries of the counties.   An examination of the many cases decided by the Supreme Court of this State, as also by the courts of last resort in other States, will show that in cases where the liability of counties because of failure to repair bridges was involved, decisions affecting towns and cities, as well as counties, are cited and relied on without distinction.

The case of *House* v. *Board, etc., supra,* was an action by the appellant to recover damages for alleged negligence on the part of the appellee (the county) in suffering one of the bridges of the county to become out of repair, etc.   It was contended by counsel for the appellee that a county stood upon different ground in respect to liability from that occupied by a city.   The court held otherwise, and, among other things, said :

." No substantial difference is perceived between the duty of a county to keep the bridges therein in repair, and the duty of a city to keep its streets in repair, so far as the general public is concerned.   They are both matters of public interest,.and controlled by the general policy of the State. Or, to state the proposition conversely, the matter of keeping the bridges of a county in repair is as local in its character as the matter of keeping the streets of a city in repair."

The repair of a bridge, especially when its floors are to be taken up and relaid, would seem to necessarily render it unsafe for night travel, or use. The danger arises from the very nature of the improvement, and if it can be averted only by special precautions, such as lights or barricades, then the county, while the work is going on, is bound to see to it that they are not omitted.

The public, in the use of the bridge, in the case at bar, had a right to rely upon the legal obligation of the county to keep it in proper repair, and if its repair became necessary that it would be so guarded by the county while the repairs were in progress that no injury would result to the public from its ordinary and reasonable use.

The demurrer to the complaint should have been overruled.

The judgment is reversed with costs, and cause remanded for further proceedings in accordance with this opinion.

Filed Feb. 3, 1892.