## THE CITY OF INDIANAPOLIS *v.* MAROLD.

[No. 3,103.    Filed November 1, 1900.]

MUNICIPAL CORPORATIONS.—*Repair of Street by Independent Contractor.*—*Negligence of City.*—A street was being improved by independent contractors. It became necessary to lower a bridge forming part of the street so as to correspond with the new grade. One end of the bridge was raised several inches in order that the abutment might be cut down. While the bridge was thus raised the workmen employed by the contractors placed a block at the end of the bridge, making a step for footmen who continued to cross. During the time the bridge and street were being repaired the plaintiff passed over the bridge several times, using the block as a step in descending therefrom. At dusk on a certain evening, about two hours after plaintiff had thus crossed the bridge in safety, he attempted again to cross. No lights or barriers having been placed at the bridge, the plaintiff fell and was injured. *Held*, that the city was liable. *pp. 428-436.*

DAMAGES.—*Excessive Damages.*—*Appeal.*—The verdict of a jury will not be set aside on appeal on the ground that the damages assessed are excessive, where the damages assessed are not so great, in view of the evidence, as to induce the belief that the jury acted from prejudice, partiality or corruption. *pp. 436, 437.*

EVIDENCE.—*Standard Life Tables.*—*Personal Injuries*—In an action against a city for personal injuries sustained by reason of the city's negligence, standard life tables may be introduced in evidence to show the probable duration of the plaintiff's life on the question of compensation, where the injuries are shown to be permanent. *p. 437.*

From the Marion Superior Court.    *Affirmed.*

*J. W. Kern* and *J. E. Bell*, for appellant.
*J. W. Noel* and *F. J. Lahr*, for appellee.

COMSTOCK, J.—Appellee brought this action to recover for personal injuries received by him by falling off a bridge in the city of Indianapolis on the evening of the 15th day of October, 1896. The bridge crosses the canal at Vermont street in said city, and was at the time resting upon jacks

and scaffolds for the purpose of constructing a new wall beneath the same, so that it could be lowered to correspond with a new pavement then being constructed upon Vermont street. The cause was tried by a jury, and a verdict returned in favor of appellee for $5,000. Answers to interrogatories were returned with the general verdict. The plaintiff remitted $2,000, and judgment was rendered in his favor for $3,000.

Counsel for appellant discuss only the action of the trial court in overruling its motion for a new trial.

The record discloses substantially the following facts: The canal running through the city of Indianapolis is located in a part of Missouri street, which street runs north and south. Vermont street runs east and west and intersects Missouri street and the canal. The bridge crosses the canal extending the full width of Vermont street, and consisted of six passageways, the one at the extreme north and the one at the extreme south being footways, and the other four passageways driveways for vehicles, differing only from the footways in that the driveways were the wider. These six passageways were each separated from the other by iron balustrades. The footways at one time corresponded to the sidewalk on each side, but at the time of the accident the passageways left open for pedestrians corresponded to the first driveway on the north side of the bridge lying adjacent to the north footway. The Big Four Railroad track ran north and south along the east side of Missouri street, and adjacent to the east end of said bridge, the nearest rail being about six or seven feet east of the east end of the bridge.

Prior to the time of the accident the city of Indianapolis had contracted with independent contractors for a block pavement on the roadway of Vermont street. It became necessary that the bridge across the canal should be lowered nine inches, to make it conform to the grade of the new block pavement. The city of Indianapolis entered into a

written contract with independent contractors to lower the bridge so as to make it conform to said grade. The bridge rested on stone abutments, and in order to lower the bridge it was necessary to raise each end and cut down the stone wall supporting it. The independent contractors began two or three weeks prior to the accident, by raising the west end by means of jacks so that the weight was off the wall. The wall was then taken down to the proper height and the bridge let down upon the wall. After the west wall had been lowered and the bridge lowered upon said wall the workmen proceeded to the east end of the bridge and raised it by means of jacks so as to relieve the wall; the wall was then cut down to the proper height, and the east end of the bridge lowered upon it, so that it conformed to the grade of the block pavement.

During all of this time the street was closed to vehicles by reason of the torn up condition of the block pavement, and neither the bridge nor the street adjacent it was used by vehicles, but during none of such time was the street closed to pedestrians. At the east end of the north drive a block four or five feet long and about twelve inches square was placed by workmen of the contractors so that it formed a convenient step from the bridge to the block, then from the block to the adjacent ground. This block was placed there on purpose, to enable the people to pass easily over the bridge, and remained there for several days for that purpose and until after 4 o'clock of the afternoon preceding the accident, which occurred at about ten minutes to 6 o'clock. No planks, footways, or bridges were laid at any time from the east end of said bridge to the ground until the next morning after the accident.

Vermont street was a much traveled street, and travel continued apparently uninterrupted over said bridge during all the time it was under repair. A great many people passed over it by day and by night, to the plaintiff's knowledge. Appellee lived on the west side of Missouri street,

about half a square south of the bridge. The east end of the bridge was first raised on Monday, and the injury occurred on the following Thursday. The appellee passed over the bridge many times during this time, several of the times being after night. He passed over the bridge at the north drive, and descended over the east end thereof by means of this block provided as a step. That at about 4 o'clock on the day of the injury, he passed over the bridge by the north drive, following said passageway, and in a few minutes returned, following the same course, passing over both times without inconvenience and with safety. That about ten minutes before 6 o'clock in the evening of the same day, it being the 15th of October, and darkness approaching early, he started again to cross the bridge. It was getting fairly dark. Twilight was just passing away. It was cloudy. The moon was obscured by clouds. The planks of the bridge floor and the balustrades could be discerned. Appellee testified that he could not see the railroad tracks six or seven feet away "right plain." As he approached the bridge from the west to the east, he followed the same course he had traversed nearly two hours before and at other times during the week and where he had often crossed over in safety. As he came to the east end of the bridge he approached the edge slowly and cautiously and looked for the block upon which he had crossed the bridge. As he looked he was sure it was there and stepped towards it, but the block had, without his knowledge, been removed, stones had been piled in the path which two hours before had been open to pedestrians, and he fell and sustained severe injury. In crossing the bridge he proceeded slowly, exercising his senses to follow the safe path.

Appellant asks that the judgment of the court be reversed (1) because "appellee had complete knowledge of the condition of the bridge, and in going upon it as he did assumed all the risk." It is true that appellee was familiar with the general condition of the street and the bridge prior to

and at the time he received his injury. He did not know, as found by the jury in answer to interrogatories, that the block or step had been removed after he had seen and used it at 4 o'clock of the day of his injury. The fact which made the use of the bridge dangerous to him, with his knowledge of the premises, was the removal of the block, of which he had no knowledge, and which he had no reason to expect. Looking for and believing that he saw the block in place, he could not be said to have voluntarily encountered a known danger. He did not, as found by the jury, know the true condition of the premises. The principle, therefore, for which counsel contend does not apply. (2) "It was light so that appellee by the use of ordinary care could have seen the absence of the block on which he tried to step." The jury have specially found that appellee crossed the bridge slowly and cautiously and was carefully looking at the place of the danger known to him; and before taking the step which led to his injury, he looked carefully. The degree of light was uncertain; the evening was cloudy; some objects he could discern distinctly, others not; lights had been lighted in the neighboring houses. Manifestly the night was not sufficiently light to enable him to see that the block onto which he intended to step was not where he believed it to be. (3) "Reasonably safe footwalks had been placed at each end of the footways of said bridge over which he could have passed without danger." Upon this question the evidence is not in entire harmony, but the jury found against the claim of appellant. The question was for their decision. (5) "The block or step where appellee fell was not placed there by the city." The city did not have notice that the block had been removed at the time of the injury. The work was being done by an independent contractor. The evidence is conclusive that the block was placed in position to be used as a step by workmen employed by the contractor. The nature of the work, the lowering of a bridge, and the paving of a much traveled street necessarily

raised obstructions to travel, and made dangerous defects that the appellant was bound to take notice of and to guard. The paving of the street made the lowering of the bridge necessary. The rule is settled that a city when performing a duty imposed upon it by law can not shift the responsibility for conditions created by itself in the performance of such duty upon a contractor, and rid itself of its obligations.

Judge Dillon, in his work on Municipal Corporations, section 1027, says: "Whether the duty of maintaining the streets in a safe condition for public travel and use is specially imposed on the corporation, or is deduced in the manner before stated, *it rests primarily, as respects the public, upon the corporation,* and the obligation to discharge this duty cannot be evaded, suspended, or cast upon others, by any act of its own. Therefore, according to the better view, where a *dangerous excavation is made* and negligently left open (without proper lights, guards, or covering), in a traveled street or sidewalk, *by a contractor under the corporation* for building a sewer or other improvement, the corporation is liable to a person injured thereby, although it may have had no immediate control over the workmen, and had even stipulated in the contract that proper precautions should be taken by the contractor for the protection of the public, and making him liable for accidents occasioned by his neglect."

And upon the same subject at section 1030 he says: "Accordingly, the later and better considered cases in this country respecting streets have firmly, and, in our judgment, reasonably, established the doctrine that, where *the work contracted for necessarily constitutes an obstruction or defect* in the street, of such a nature as to render it unsafe or dangerous for the purposes of public travel, unless properly guarded or protected, the employer (equally with the contractor), where the injury results directly

from the acts which the contractor engaged to perform, is liable therefor to the injured party. But the employer is not liable where the obstruction or defect in the street causing the injury is wholly collateral to the contract-work, and entirely the result of the negligence or wrongful acts of the contractor, sub-contractor, or his servants. In such a case the immediate author of the injury is alone liable."

The work contracted for created defects that were necessarily dangerous to travel, especially by night. The improvement contemplated the creation of dangerous places and charged the appellant with notice of the necessity for guards and signal lights.

In *Park* v. *Board, etc.,* 3 Ind. App. 536, the court say: "It is clear, from the authorities cited, that the obligation of a town or city to keep its streets in a safe condition for the passage of persons and property is a primary one, and the municipality cannot devest itself of this duty. It is also well settled by the greater weight of authority, that because of this duty to the public, a city or town, when having work done upon its streets or bridges, although by a contractor, is bound to see that such precautions are used while the work is in progress as are reasonably necessary to protect travel. No matter what kind of contract the city may make, nor with whom, it still remains charged with the care and control of the street in which the improvement, change or repair is being made, and it can not throw off its duty and the responsibilities through which that duty is to be enforced. 2 Dillon Munic. Corp., section 1027; *Storrs* v. *City of Utica,* 17 N. Y. 104; *Brusso* v. *City of Buffalo,* 90 N. Y. 679; *Circleville* v. *Neuding,* 41 Ohio St. 465; *City of St. Paul* v. *Seitz,* 3 Minn. 297; *Brooks* v. *Inhabitants, etc.,* 106 Mass. 271; *Groves* v. *City of Rochester,* 39 Hun 5; *Wilson* v. *City of Wheeling,* 19 W. Va. 323; *City of Jacksonville* v. *Drew,* 19 Fla. 106; *Dressell* v. *City of Kingston,* 32 Hun 533; *Welch* v. *City of St. Louis,* 73 Mo. 71;

*Hawxhurst* v. *Mayor, etc.,* 43 Hun 588; *Russell* v. *Inhabitants, etc.,* 74 Mo. 480. And in such cases notice to the municipality of the absence of proper precautions or guards would not be necessary. *Brusso* v. *City of Buffalo, supra; Brooks* v. *Inhabitants, etc., supra; Ironton* v. *Kelley,* 38 Ohio St. 50; *Groves* v. *City of Rochester, supra; Board, etc.,* v. *Pearson,* 120 Ind. 426."

At the time appellee received his injury, there were no lights nor barricades giving notice of the danger. If the appellant had performed its duty in seeing that the place was properly lighted or guarded, it would have known of the absence of the block or step on which appellee relied. It is evident, and the jury find, that the presence of a light would have enabled appellee to have avoided the accident which resulted in his injury.

(6) "All travel for vehicles had been shut off from said bridge, and no invitation of any kind was held out to the public to pass over said bridge where the driveways were located, and where appellee fell." Neither the street nor the bridge was barricaded. While the torn up condition of the bridge precluded travel by vehicles, the jury found that "the place over which he crossed at the time of his injury had been held out to the plaintiff's knowledge as a proper place for travelers to cross said bridge." This finding is amply supported by the evidence.

(7) "The work upon the bridge was being done by independent contract, and the city had no control over the manner in which the work was done." What we have said upon the fourth proposition of appellant is applicable to the seventh.

(8) "Appellee was guilty of negligence in going where he did at the time he received his injury." We need cite no authorities in support of the proposition that a person is not necessarily precluded from recovering for injuries resulting from defective streets because he had knowledge of such defects. Under such circumstances one is required to

use care commensurate with the known danger. The negligence of the injured party is a fact to be determined by the jury. The answers to interrogatories show that appellee exercised more than the care of an ordinarily prudent person. His injury was the result of want of care upon the part of the city.

The trial court refused to give to the jury instruction numbered two requested by the appellant. This instruction was upon the theory that there were footways for passengers at the north and south sides of the bridge, and from the ends of these footways, which corresponded with the sidewalks, footwalks had been constructed of long planks leading from the bridge to the ground, and that appellee, being familiar with the situation, should have walked over them on the afternoon of his injury; that not having done so, but having attempted to step down from the east end of the bridge at a point other than where such footways were located, and being injured thereby, he could not recover. This action of the court is made a reason for a new trial. This instruction is substantially covered by instruction numbered thirteen, given by the court. Appellant was not therefore harmed by this ruling of the court.

Appellant excepted to the giving to the jury of the seventh, ninth, and fourteenth instructions. The instructions given, considered together, define negligence, the liability therefor, and contributory negligence, and applies the law to the theory of the case maintained by appellant and appellee. They thus fairly perform the office of instructions.

It is claimed that the damages assessed are excessive. Two thousand dollars of the amount of the verdict was deemed by the court excessive. The amount for which the judgment was rendered stands for the opinion of the trial court after a careful review of all the evidence. The damages assessed are not so great, in view of the evidence, as to induce the belief that the jury acted from prejudice, par-

tiality, or corruption. Under numerous decisions of the Supreme Court and this court, we would not be sustained in disturbing it. See, *Lauter* v. *Duckworth,* 19 Ind. App. 535 and cases cited.

In conclusion, counsel for appellant state that it was error "to admit in evidence the mortuary tables and the testimony of the witness Cougill read from his deposition as to the value of appellee's earning capacity during his expectancy." It is further stated that evidence of this class is only admissible where there is a permanent injury followed by total disability. No reference is given to where the evidence may be found, and no authorities are cited in support of this claim.

We deem it, therefore, only necessary to say that "standard life tables may be introduced to show the probable duration of the plaintiff's life on the question of compensation for permanent injuries." *Louisville, etc., R. Co.* v. *Miller,* 141 Ind. 533; *Shover* v. *Myrick,* 4 Ind. App. 7.

Dr. Rowe, the appellee's attendant physician, testified that appellee was permanently injured.

We find no error for which the judgment should be reversed. Judgment affirmed.