J. E. BENNETT, Appellee, v. THE INCORPORATED TOWN OF MOUNT VERNON, IOWA, and MILES B. TWOGOOD, Appellant.

Streets: PRIVATE PRIVILEGES: ESTOPPEL: DAMAGES. Municipal corporations have neither statutory nor implied power to grant the use
1 of streets for private purposes, and the city is not estopped by its conduct from using the streets for public purposes even though such use may be destructive of private privileges, nor can it be compelled to respond in damages therefor.

Independent contractor: LIABILITY OF CITY. Where one contracts to
2 furnish all material and labor for a public improvement and has sole charge and supervision of the work, he is an independent contractor for whose acts a city is not liable, unless there was a positive duty emanating from the city to the individual, or the work itself intrinsically dangerous; or, if properly done would be likely to create a nuisance.

Public improvement: LIABILITY OF CONTRACTOR. A contractor en-
3 gaged in laying water mains in a city street is not responsible in damages to a property owner, resulting from a necessary disconnection of a private drain running into the street, when done in a proper and lawful manner, but may become liable by doing the work in a negligent manner or so as to create a private nuisance; nor is he responsible for extraordinary and unforeseen circumstances.

**Negligence:** INSTRUCTION. Where the evidence discloses that plain-
4 tiff could, at moderate effort and expense, have prevented the injury
for which damages are sought, the court should have charged that
it was her duty to use ordinary care to protect herself from the
consequences of defendant's wrong.

**Evidence:** HYPOTHETICAL QUESTIONS. Hypothetical questions which
5 assume facts not in evidence should not be answered.

*Appeal from Linn District Court.*—HON. J. H. PRESTON,
Judge.

WEDNESDAY, JULY 13, 1904.

ACTION at law to recover damages for the flooding of
plaintiff's cellar, due, as is alleged, to the negligence and
carelessness of defendants in removing a tile drain and dig-
ging a ditch in which water accumulated and found its
way through the tile upon plaintiff's property. Defendants
denied liability, and interposed certain defenses, which will
be referred to in the body of the opinion. Trial to a jury.
Verdict and judgment for plaintiff against both defendants,
and they appeal.— *Reversed.*

*Wm. Dennis* and *Redmond & Stewart,* for appellants.

*Chas. W. Kepler,* for appellee.

DEEMER, C. J.— Plaintiff is the owner of lots 5 and 6,
in block 12, in the town of Mt. Vernon. She claims that
her grantor, one Leech, with others, obtained permission from
the defendant town to lay a tile across Fourth avenue, in said
town, adjoining the property in controversy, for the purpose
of draining the cellars on their property into an open ditch;
that in July of the year 1902 the defendant town employed
the defendant Twogood to put in water mains on said Fourth
avenue to a depth of six feet, and that, pursuant to said em-
ployment, he dug an open ditch in said avenue, opposite
plaintiff's property, to a depth of six feet, disconnected the

tile leading from her cellar to its outlet, and permitted the ditch to remain open for the period of six weeks; that during the time said ditch was open and the tile disconnected two heavy rains fell, filling the ditch, and causing the water to flow back from the disconnected tile into plaintiff's cellar, filling it with mud and debris of all kinds, and causing damages to the walls and chimneys of her house, and to the fixtures and provisions in the cellar. The negligence charged is the disconnecting of the tile, the digging of the open ditch, and failure to replace the tile and to fill the ditch within a reasonable time. Defendant town pleaded that its codefendant Twogood was an independent contractor for whose acts it was not responsible, and that the damage, if any, to plaintiff's property, was due to violent and unusually heavy rains, which it could not have anticipated or guarded against. It also denied generally the allegations of plaintiff's petition. The defendant Twogood interposed practically the same defenses.

Whether or not plaintiff's grantor had permission from the street and alley committee of defendant town to cross Fourth avenue with his tile is a matter in dispute, and, in our view of the case, it is not necessary to settle this in order to arrive at a correct solution of the questions involved. There is no evidence that defendant town, through its council, gave this permission, and no evidence that the street and alley committee of said council, as such, ever gave Leech this right. Whatever was done was by members of this committee individually, and not as a committee acting together.

Conceding *arguendo,* however, that the town gave him permission, or that it impliedly consented to it by standing by and seeing the work done, we have to inquire what rights it gave him or his grantee in the premises. There **1. PRIVATE PRIVILEGES: estoppel; damages.** is no statute in this State authorizing towns to grant to individuals the right to the use of their streets for private purposes. These municipalities hold the streets in trust for the public, and cannot put them to any

use inconsistent with street purposes. They have no implied
power to grant privileges to use the streets for private pur-
poses. The use which it is claimed Leech obtained of the
street, through the street and alley committee, was purely for
his personal advantage. It did not in any way concern or
promote the public health or welfare, but was for the purpose
of draining water from his cellar which accumulated therein
at times of continuous heavy rains. If the defendant town
were a private individual, and it had either expressly or im-
pliedly given plaintiff's grantor permission or license to
construct a tile drain over its property, and he had made
expenditures of money in reliance upon this license or permis-
sion, there are many authorities in support of the proposition
that such a license would be irrevocable, and holding that
one injured by the wrong or neglect of the licensor may have
his damages against him. But this rule does not obtain as
against city or town authorities. If it did, they might di-
vert the streets and other public property to private pur-
poses, and estop themselves and the municipalities they
represent from making necessary and required improvements.
Indeed, if this rule were held to apply to municipalities,
it would open the door to the destruction of all public rights
in the streets and other public places. One dealing with
the officers of a municipality is bound at his peril to take
notice of the limitations upon their power and authority.
This is fundamental doctrine, and we need not stop to cite
authorities in its support. As the authorities had no right
to grant express permission to use the streets for private
purposes, neither they nor the town itself can be estopped
by conduct from using the streets for public purposes, even
though such use may be destructive of private privileges.
The doctrine of irrevocable license to which we have referred
is bottomed on the theory of an estoppel, and consequently it
does not apply to such a case as this. The town had author-
ity to lay water mains in its streets, and also had power to
contract with a third person to do this kind of work, and if,

in the prosecution of that enterprise, it became necessary to destroy private drains, the case, in the absence of negligence, is one of *damnum absque injuria.* With these principles settled, we now go to the case as presented by the record before us.

It appears without controversy that defendant town made a contract with Twogood whereby he, Twogood, undertook to furnish all the material and labor for laying a four-

2. INDEPENDENT CONTRACTOR: liability of city.

inch water main along Fourth avenue for an agreed compensation per lineal foot. The town retained no control over the method or manner of doing the work; that was left entirely to Twogood, who had the right to adopt the means, and was responsible to the town only for the end accomplished. The town did not even retain the right to direct or supervise the work. True, it is shown that the water superintendent of defendant town had charge of some of the work, but he expressly stated that in so doing he was acting for the defendant Twogood. But, however this may be, it is not shown that he had any authority from the defendant town in the matter of laying the water mains. Under such circumstances, defendant Twogood was an independent contractor, for whose acts the defendant was not responsible. *Fuller v. Grand Rapids,* 105 Mich. 529 (63 N. W. Rep. 530); *Kuehn v. Milwaukee,* 92 Wis. 263 (65 N. W. Rep. 1030); *Harding v. Boston,* 163 Mass. 14 (39 N. E. Rep. 411); *Nevins v. Peoria,* 41 Ill. 502 (89 Am. Dec. 392). If the matter involved was one of positive duty to the plaintiff, then, of course, the defendant town could not relieve itself by delegating the work to an independent contractor. Or if the work itself was intrinsically dangerous, or, when properly done, was likely to create a nuisance, the defendant town would be responsible for any damage resulting therefrom. *Wood v. Ind. Dist.,* 44 Iowa, 30. But this case does not come within these rules. The motion of the defendant town, filed at the close of the evidence, for a directed

verdict in its favor, should have been sustained, and the court erred in submitting to the jury the question of its liability.

As to the defendant Twogood, he had the right to dig the trench for the construction of the water mains, and had the right to disconnect the tile running from plaintiff's cellar if he found it necessary to do so in the prosecution of his work, and cannnot be held responsible unless it be shown that he so care-lessly and negligently performed the work as that injury resulted to the plaintiff as a direct consequence thereof. Defendant Twogood had the right to dig the ditch and to disconnect the tile leading from plaintiff's cellar, but he had no right to so prosecute the work as to create a nuisance, to plaintiff's injury and damage. That is to say, he had no right to disconnect plaintiff's tile, and so construct a ditch as to cause water to flow therefrom through the tile back into plaintiff's cellar. For his mere act in disconnecting the tile and digging the ditch in a proper and lawful man-ner, there can be no recovery, but he should be held liable for any nuisance he may have created, and would not be jus-tified in doing the work in such a negligent and careless manner as to cause the plaintiff harm.

<span>3. PUBLIC IMPROVEMENT: liability of contractor.</span>

It is a sound principle of law, as well as of morals, that one shall so use his own as not to injure the rights of another. As applied to this case, the defendant Twogood undoubtedly had the right, as we have said, to do what he did, and, for any injuries resulting from the proper exer-cise of that right, the case is *damnum absque injuria;* but he could not do it in such an unreasonable and negligent manner as to create a private nuisance, or to subject the plaintiff's property to unnecessary injury. This defendant contends that the flooding of plaintiff's cellar was due to an unusual flood which he had no reason to foresee or anticipate. As he was doing a lawful act, he may not, of course, be held re-sponsible for injuries resulting from extraordinary circum-

stances which could not reasonably have been foreseen and anticipated, and the jury should have been so instructed.

The defendants asked the court to instruct that, if plaintiff could have protected herself by the use of ordinary care from the consequences of defendants' wrong, it was her **4. NEGLIGENCE:** duty to do so, and in such event she could not re-**instruction.** cover the damages claimed. In view of testimony to the effect that plaintiff might have stopped up the tile at the cellar end after the first flood at small expense and with moderate effort, we think this point should have been covered by an instruction. *Mather v. Butler Co.,* 28 Iowa, 253.

II. There were some errors in rulings on evidence, which are not likely to arise on a retrial. For example, a hypothetical question put to an expert should not have been **5. EVIDENCE:** answered, because it assumed facts not in evi-**hypothetical** **questions.** dence.

The case was not submitted on the theories we have suggested, and, without stopping to more particularly point out the exact errors, it is sufficient to say that it must be, and is, as to both defendants, REVERSED.