## CITY OF HUGO v. NANCE.

No. 2684.   Opinion Filed November 18, 1913.

(135 Pac. 346.)

1. MUNICIPAL CORPORATIONS—Liability for Negligence of Contractor. Where a municipal corporation is vested by law with authority to construct a public improvement, and lets the building of such improvement to a contractor, to be by him constructed in such manner as is prescribed by the corporation, such contractor becomes, by virtue of such contract, the agent of the corporation, and it will be liable for an injury resulting from the negligence of such contractor in the manner of the construction of such improvements.

2. SAME—Defect in Streets—Liability of City. A municipal corporation is charged by law with the duty of at all times keeping its streets and sidewalks in a reasonably safe condition for travel by the public.

3. SAME—Delegation of Duty. No municipal corporation by any act of its own can devolve this duty on another so as to relieve itself from liability for an injury resulting from its failure to perform this duty.

4. SAME—Liability for Negligence of Contractor. A municipal corporation, by contracting with another to construct an improvement for it, does not and cannot thereby abdicate its control over the streets or public grounds of such corporation, nor thereby exonerate itself from liability for an injury resulting from the negligence of such contractor in the manner of the performance of his contract.

5. SAME—Acts of Independent Contractor—Notice to City. If a municipal corporation rightfully causes an improvement to be constructed or other work to be done, whether by an independent contractor or otherwise, it is bound to take notice of the character of the work, and its condition, whether safe or dangerous, and is bound to take notice of the condition, whether safe or dangerous, of its streets and grounds as affected by the prosecution or performance of such improvement or work.

6. SAME—Claim for Damages—Waiver of Informality. Mrs. N., having a claim against the city of H., caused it to be presented to, and filed with the city clerk by her husband, acting as her

agent. The claim, on the day the same was filed, was not supported by affidavit as required by statute. On the next day, and before the claim had been acted upon by the city council, Mr. N., the husband and agent, presented to the city clerk of said city an affidavit in support thereof as required by statute. The claim was disallowed by the city council and suit brought thereon in the district court. No objection was made by the city to the form of the claim on account of the absence of the affidavit until the trial in the district court, wherein the city objected to the introduction of the same in evidence, and moved for judgment for costs, on the ground that no claim had ever been presented as required by statute. **Held,** under the facts and circumstances of the case, the failure to attach the affidavit to the claim was an informality which was waived by the city, and no objection to the form of the affidavit having been made by the city prior to the filing of the suit, the same will be deemed substantial compliance with the requirements of the statute and no error was committed by the court in refusing to tax the costs against the plaintiff.

7.	**NEGLIGENCE**—Contributory Negligence—Instructions. The defense of contributory negligence, when well pleaded, if the same is supported by any evidence, entitles the pleader to an instruction thereon by the court, defining the term and submitting the issues properly to the jury for its determination, and a failure to do so constitutes reversible error.

(Syllabus by Robertson, C.)

*Error from District Court, Choctaw County;
James R. Armstrong, Judge.*

Action by Mrs. M. L. Nance against the City of Hugo. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*E. H. Foster, R. E. Stephenson,* and *B. D. Jordan,* for plaintiff in error.

*Cocke & Willis,* for defendant in error.

Opinion by ROBERTSON, C. This is an action by Mrs. M. L. Nance against the city of Hugo to recover damages for injuries alleged to have been received on account of a defective sidewalk. She alleges in her petition substantially that on or about the 15th day of December, 1909, a deep and dangerous excavation was made in the sidewalk in said city under the direction of said city; that the said city negligently suffered the said excavation to remain open, without proper lights or other signals to apprise passers-by of its existence; that at or

about 6 o'clock in the evening of said day, as she was proceeding along the said sidewalk at a point where a public crossing had been made across the street, on account of meeting other people, she was compelled to step to one side, and that in doing so she stepped into said excavation; that she was thereby tripped and violently precipitated to and upon the concrete sidewalk, sustaining severe bruises to her limb and other portions of her body, etc.; that said injuries were caused by the said defendant in permitting said excavation in said sidewalk to be and remain open. without proper warning or signals, and the same occurred without the fault of plaintiff. The defendant answered: First, by a general denial; second, contributory negligence; third, that said excavation was not made by defendant, or by any person in its service, or under its control; fourth, no itemized verified statement of plaintiff's claim was presented to the city council prior to the institution of the suit. Plaintiff demurred to the third and fourth defenses as above set out; the said demurrer being overruled as to the third and sustained as to the fourth. Whereupon plaintiff filed her reply, the same being a general denial, and upon the issues thus joined the cause was tried to a jury, and resulted in a verdict for the plaintiff in the sum of $800, to reverse which the city of Hugo brings this appeal, and relies upon the following specifications of error for a reversal:

"(1) The court erred in overruling the motion of plaintiff in error for a peremptory instruction. (2) The court erred in giving to the jury certain instructions. (3) The court erred in refusing to give to the jury instructions requested by the defendant. (4) The court erred in overruling the motion of defendant to tax the costs against the plaintiff. (5) The court erred in overruling the motion of defendant for a new trial."

The first, second, third, and fifth assignments of error may very properly be considered together, inasmuch as they all involve the proposition that W. A. Cooke & Son being independent contractors engaged in the prosecution of the work of installing a system of waterworks for said city, that therefore the city is not liable for the wrongful acts of negligence of such contractors. This is the general rule; but it is subject to two well-defined exceptions, the first being that where the contract directly requires

the performance of a work which, however skillfully done, will be intrinsically dangerous. The reason for this exception is that one who authorizes a work which is necessarily dangerous, and the natural consequence of which is an injury to the person or property of another, is justly regarded as the author of the resulting injury. 4 Dillon, Mun. Corp. (5th Ed.) sec. 1722. The other exception to the general rule, and the one applicable to the case at bar, is where the party causing the work to be done is under a primary obligation, imposed by law, to keep the subject-matter of the work in a safe condition. The principle upon which this exception is predicated is that, where a duty is imposed, the responsibility for its faithful performance cannot be avoided, and that the party under such obligation cannot be relieved therefrom by a contract made with another for the performance of such duty. *Village of Jefferson v. Chapman,* 127 Ill. 438, 20 N. E. 33, 11 Am. St. Rep. 136.

Under the provisions of our statutes (Comp. Laws 1909, secs. 688, 689 [Rev. Laws 1910, secs. 588, 589]), the plaintiff in error was charged with the duty of at all times keeping its streets and sidewalks in a reasonably safe condition for travel by the public, nor could it by any act of its own escape this duty, or devolve it upon another so as to relieve itself from liability resulting from a failure to perform such duty. Neither could it by contract with Cooke & Son to install its waterworks system lose control of its streets, nor exonerate itself from liability for an injury resulting from the negligence of its contractors in the manner of the performance of their duties under their contract. So, admitting for the sake of argument that Cooke & Son were independent contractors, it is seen that the duty of keeping its streets and sidewalks in a reasonably safe condition for the use of the traveling public was yet imposed upon the city, and that this duty was nondelegable. This principle is well established by the decisions of the courts that have had occasion to investigate the subject.

The leading case dealing with this question seems to be *Storrs v. City of Utica,* 17 N. Y. 104, 72 Am. Dec. 437, where it is said:

"But the ultimate superior or proprietor first determines that the excavation shall be made, and then he selects his own contractor. Can he escape responsibility for putting a public street in a condition dangerous for travel at night by interposing the contract which he himself has made for the very thing which creates the danger? I should answer this question in the negative. He may insert in the agreement a clause that the contractor shall provide proper lights and guards; but I do not see how even that can change the principle. The contractor in that case would be liable to indemnify his employer for accidents occasioned by his neglect of the stipulation, and, perhaps, also liable directly to persons injured. He might even be liable to the latter for leaving the ditch unguarded at night, without any stipulation on his part. But, granting all this, it has no tendency, in my judgment, to shield the ultimate superior or author of the work from responsibility. The principles suggested become plain propositions in the case of a municipal corporation which owes to the public the duty of keeping its streets in a safe condition for travel. That the duty exists is not denied, and the doctrine that persons receiving special injury from its nonobservance can maintain an action therefor was examined by this court and asserted in the recent case of *Hickok v. Village of Plattsburgh,* 16 N. Y. 161. What, then, is the obligation of a city corporation when it undertakes to construct a sewer in a public street? Can it in that undertaking, and in any mode of providing for the execution of the work, throw off the duty in question, and the responsibilities through which that duty is to be enforced? Although the work may be let out by contract, the corporation still remains charged with the care and control of the street in which the improvement is carried on. The performance of the work necessarily renders the street unsafe for night travel. This is a result which does not at all depend on the care or negligence of the laborers employed by the contractors. The danger arises from the very nature of the improvement, and if it can be averted only by special precautions, such as placing guards, or lighting the street, the corporation which has authorized the work is plainly bound to take those precautions. The contractor may very probably be bound by his agreement not only to construct the sewer but also to do such other acts as are necessary to protect travel. But a municipal corporation cannot, I think, in this way either avoid indictment in behalf of the public or its liability to individuals who are injured."

In *Mayor and Aldermen of Birmingham v. McCary*, 84 Ala. 477, 4 South. 634, it is said, in discussing this identical question:

"The city court substantially conformed its rulings to the foregoing principles. The excavation made across the sidewalk of the city in the process of constructing the sewer was made by the express authority of the city in the exercise of a purely ministerial power. Stonestreet, notwithstanding the general independent nature of his employment as a contractor, was a quasi agent of the municipal authorities for this purpose. If he had been indicted for creating a nuisance he could only have defended under the right conferred by them, and as their agent *pro hac vice*. *City of Detroit v. Corey*, 9 Mich. 165 [80 Am. Dec. 78] ; *Nashville v. Brown* [9 Heisk. (Tenn.) 1], 24 Am. Rep. 289. The excavation was one which in its nature would be intrinsically or necessarily accompanied with danger to pedestrians, if left uncovered or unguarded, and without proper lights in the nighttime. The duty of the city, imposed by its charter, was to see to it that its sidewalks were kept in a reasonably safe condition for ordinary use by the public. This duty it could not escape by letting out the work to a contractor. The authorities should have seen to it that the contractor performed this duty, and for this act of negligence they are liable for any injury and damages proximately resulting from it, to which the plaintiff did not contribute by his want of ordinary care."

In *Village of Jefferson v. Chapman, supra,* the court said:

"Another exception to the general rule relieving an employer from liability for an injury occasioned by an independent contractor is where the party causing the work to be done is under a primary obligation, imposed by law, to keep the subject-matter of the work in a safe condition. The principle upon which this exception is predicated is that, where a duty is so imposed, the responsibility for its faithful performance cannot be avoided, and that the party under such obligation cannot be relieved therefrom by a contract made with another for the performance of such duty."

In *Park v. Board,* 3 Ind. App. 536, 30 N. E. 147, it is said:

"It is clear from the authorities cited that the obligation of a town or city to keep its streets in a safe condition for the passage of persons and property is a primary one, and the municipality cannot divest itself of this duty. It is also well settled by the greater weight of authority that because of this duty to the public a city or town, when having work done upon its

streets or bridges, although by a contractor, is bound to see that such precautions are used while the work is in progress as are reasonably necessary to protect travel. No matter what kind of a contract the city may make, nor with whom, it still remains charged with the care and control of the street in which the improvement, change, or repair is being made, and it cannot throw off its duty and the responsibilities through which that duty is to be enforced."

In *Beattie v. City of Detroit,* 129 Mich. 25, 88 N. W. 71, the court says:

"The law imposes upon the city the duty of keeping its ways in a condition reasonably safe for public travel. Necessarily there must be times when they cannot be in good condition—as when they are undergoing repairs—and at such times travelers must heed the obvious dangers. But the city is not absolved from all care and responsibility at such times, nor can it absolve itself by turning the highway over to a contractor. As between it and the public, it must see that such portion of the way as is open for use—at least where it is so under the terms of its contract with the contractor—is kept in a condition reasonably safe under the circumstances, and, if it should be kept open under the contract, it should see that the contract is performed in that respect. In other words, a city cannot, by merely contracting with somebody that he will keep the street in a condition reasonably safe (whether the contract specifies the method or not), relieve itself from the statutory liability, and impose it upon another. Thus a contractor may promise to keep a trench fenced, or signal lamps in it at night, and do neither. One injured in consequence is not without remedy against the city, for the statutory responsibility rests there."

Mr. Dillon, in his excellent work on Municipal Corporations, vol. 4 (5th Ed.) sec. 1720, says:

"Whether the duty of maintaining the streets in a safe condition for public travel and use is specially imposed on the corporation, or is deduced in the manner before stated, *it rests primarily, as respects the public, upon the corporation,* and the obligation to discharge this duty cannot be evaded, suspended, or cast upon others by any act of its own. Therefore, according to the better view, where a *dangerous excavation is made* and negligently left open (without proper lights, guards, or covering) in a traveled street or sidewalk *by a contractor under the corporation* for building a sewer or other improvement, the corporation is liable to a person injured thereby, although

it may have had no immediate control over the workman, and had even stipulated in the contract that proper precautions should be taken by the contractor for the protection of the public, and making him liable for accidents occasioned by his neglect." (Italics ours.)

As supporting this doctrine, see the following cases: *Storrs v. Utica, supra; Vogel v. New York,* 92 N. Y. 10, 44 Am. Rep. 349; *Wilson v. Wheeling,* 19 W. Va. 323, 42 Am. Rep. 780; *Birmingham v. McCary, supra; Chicago v. Murdock,* 212 Ill. 9, 72 N. E. 46, 103 Am. St. Rep. 221; *East St. Louis v. Murphy,* 89 Ill. App. 22; *Indianapolis v. Marold,* 25 Ind. App. 428, 58 N. E. 512; *Bennett v. Mt. Vernon,* 124 Iowa, 537, 100 N. W. 349; *Cabot v. Kingman,* 166 Mass. 403, 44 N. E. 344, 33 L. R. A. 45; *Donahoe v. Kansas City,* 136 Mo. 657, 38 S. W. 571; *Omaha v. Jensen,* 35 Neb. 68, 52 N. W. 833, 37 Am. St. Rep. 432; *Schumacher v. New York,* 40 App. Div. 320, 57 N. Y. Supp. 968; *McAllister v. Albany,* 18 Ore. 426, 23 Pac. 845; *Trego v. Honeybrook,* 160 Pa. 76, 28 Atl. 639; *Nashville v. Brown,* 9 Heisk. (Tenn.) 1, 24 Am. Rep. 289; *Glasgow v. Gillenwaters,* 113 Ky. 140, 67 S. W. 381; *Brooks v. Somerville,* 106 Mass. 271; *Haniford v. Kansas City,* 103 Mo. 172, 15 S. W. 753; *St. Paul v. Seitz,* 3 Minn. 205 (Gil. 205), 74 Am. Dec. 753; *Circleville v. Neuding,* 41 Ohio St. 465; *Drake v. Seattle,* 30 Wash. 81, 70 Pac. 231, 94 Am. St. Rep. 844; *Okla. City v. Meyers,* 4 Okla. 686, 46 Pac. 552; *Guthrie v. Thistle,* 5 Okla. 517, 49 Pac. 1003; *Guthrie v. Swan,* 5 Okla. 779, 51 Pac. 562; *Norman v. Teel,* 12 Okla. 69, 69 Pac. 791; *Stillwater v. Swisher,* 16 Okla. 585, 85 Pac. 1110; *Okla. City v. Reed,* 17 Okla. 518, 87 Pac. 645, 33 L. R. A. (N. S.) 1083; 28 Cyc. 1282 *et seq.*

From the foregoing cases the following propositions are established (according to the case of *Beatrice v. Read,* 41 Neb. 224, 59 N. W. 774):

"(1) That, where a municipal corporation is vested by law with authority to construct a public improvement, and lets the building of such improvement to a contractor, to be by him constructed in such manner as is prescribed by the corporation, such contractor becomes, by virtue of such contract, the agent of the corporation, and it will be liable for an injury result-

ing from the negligence of such contractor in the manner of the construction of such improvements. (2) That a municipal corporation is charged by law with the duty of at all times keeping its streets and sidewalks in a reasonably safe condition for travel by the public. (3) That no municipal corporation by any act of its own can devolve this duty on another so as to relieve itself from liability for an injury resulting from its failure to perform this duty. (4) That a municipal corporation, by contracting with another to construct an improvement for it, does not and cannot thereby abdicate its control over the streets or public grounds of such corporation, nor thereby exonerate itself from liability for an injury resulting from the negligence of such contractor in the manner of the performance of his contract. (5) That, if a municipal corporation rightfully causes an improvement to be constructed or other work to be done, whether by an independent contractor or otherwise, it is bound to take notice of the character of the work, and its condition, whether safe or dangerous, and is bound to take notice of the condition, whether safe or dangerous, of its streets and grounds as affected by the prosecution or performance of such improvement or work."

There is no merit to the contention of counsel for plaintiff in error that section 709, Comp. Laws 1909 (Rev. Laws 1910, sec. 609), relieves the city from liability in this case. This section does not in any manner change the rule of liability herein above enunciated, nor absolve the city from the duty imposed by statute of keeping and maintaining its streets and sidewalks in a reasonably safe condition for the traveling public. In this case the proximate cause of the injury was the hole in the sidewalk, and the question as to who is required to construct, and who is required to care for and repair defects in, sidewalks is without the case, and will not be considered further by us on account of the rule established by the authorities hereinbefore cited. The instructions given by the court and complained of by plaintiff in error in this respect are not, therefore, subject to the criticisms lodged against them. Had our conclusions with reference to the liability of a municipality in cases where the municipality was protected by an independent contractor been different, these instructions would necessarily

have been erroneous; but as it is, they correctly state the rule of law applicable to the facts in this case.

The question of contributory negligence was fairly covered by the instruction of the court, and, this being a question of fact for the jury, and there being sufficient evidence on the subject to sustain the verdict, the question will not be further considered by this court on appeal.

It is urged that the court erred in overruling the motion of plaintiff in error to tax the costs against the defendant in error, for the reason that the claim presented to the city by the defendant in error was not verified by the oath of claimant, and that therefore no costs should be adjudged against the city.

Section 603, Rev. Laws 1910, provides that:

"All claims against the city must be presented in writing, with a full account of the items, and verified by the oath of the claimant or his agent, that the same is correct, reasonable and just, and no claim or demand shall be audited or allowed unless presented and verified as provided for in this section: Provided, that no costs shall be recovered against such city in any action brought against it, for any unliquidated claim, which has not been presented to the city council to be audited, nor upon claims allowed in part unless the recovery shall be for a greater sum than the amount allowed with the interest due;" etc.

On page 277 of the case-made is found plaintiff's Exhibit A, which is a claim in writing by Mrs. M. L. Nance against the city of Hugo for damages in the sum of $5,000 for injuries occasioned by a defective sidewalk. On page 277 of the case-made is found plaintiff's Exhibit B, which is an affidavit in the following words:

"State of Oklahoma, Choctaw County—ss.:

"M. L. Nance, agent of Mrs. M. L. Nance, being first duly sworn states on oath that the above and foregoing claim of Mrs. M. L. Nance is correct, reasonable, and just.   M. L. Nance.

"Subscribed and sworn to before me this, the 25th day of January, 1910.   Calvin Jones.   [Seal.]   My commission expires March 17, 1911."

It is further shown by the testimony of R. L. Jones, mayor of defendant city (case-made, p. 59), that Mr. M. L. Nance, the husband of Mrs. M. L. Nance, *as her agent,* presented a

claim for $5,000 to the city council for the damages complained of, and that the council refused to consider it, although he assigned no reason for the failure of the city council to act on the same. And on pages 86, 87, and 88, of the case-made, W. D. Echols, city clerk of defendant city, testified that the claim was presented to him by the attorney of Mrs. Nance; that the next day or so the attorney came back and handed him Exhibit B, the affidavit; that he put the two papers in an envelope together. The claim is dated January 24th, while the affidavit was executed January 25, 1910. The witness Echols, in testifying, identified the claim and affidavit, and held them in his hand while before the court and jury, and testified that the same had been filed with him as city clerk by the attorney for Mrs. Nance; that he had presented the same to the city council, and that the council had ignored the claim. He read the affidavit to the court and jury without objection. Counsel for the city objected to the introduction of this claim and affidavit "on the ground that it is not a sufficient affidavit. Nothing to show that Mrs. Nance did not make it herself. We object to it as not being a verified statement." This objection was sustained by the court over the exceptions of the plaintiff. Counsel for the city contends that this affidavit was wholly insufficient to authorize the court to tax the costs of this case against it.

The objection lodged against the claim is purely technical. No objection was made by the city clerk, or the city council, to the alleged defect in the claim or affidavit when they were first presented to them, nor at any time thereafter. The failure to attach the affidavit to the claim was an informality of such character, under the circumstances of this case, as to warrant little consideration. The claim itself was in writing, and was in due form, and stated with distinctness and particularity the nature of the injury and amount of damages claimed, and was filed and presented to the city council. To be sure it was not supported by affidavit at the time it was filed by the city clerk, although the papers in evidence show that on the next day, and before the claim had been presented to the city council, the attorney for the plaintiff presented the affidavit

of Mr. Nance, who, according to the affidavit and the evidence of the mayor (Case-Made, p. 59), was the agent of Mrs. Nance, and requested the clerk to file it with the claim, and while the affidavit is informal, and does not state the reasons why Mr. Nance, as agent, made the same, yet, in the absence of objection to the form of the affidavit, or to the fact that it was made by Mr. Nance, the husband and agent, instead of Mrs. Nance, the principal, we deem it sufficient and a substantial compliance with the requirements of the statute. The trial court was of this opinion, also, because the costs of the case were later taxed to the city.

It was not essential to defendant in error's right of recovery that the claim and affidavit supporting it should be introduced in evidence at the trial. The fact that the claim was on one piece of paper and the affidavit on another in itself is a matter of no consequence. All that was required was proof that the claim had been filed with the city clerk, and presented to the city council for allowance or disallowance. This the record shows was done, and there is nothing to show that any necessary steps were omitted. The city did not deny or dispute in any manner the testimony of Mrs. Nance's witnesses who testified that the claim had been prepared, sworn to, and filed.

The only objection made by the city was to the introduction of the claim supported by the so-called defective affidavit. The court did not assign any reason in refusing to permit the introduction of the claim in evidence, and by its later action in assessing the costs against the city, in the face of the city's objection, we are bound to presume that the rejection of this testimony was not on the grounds that the presentation of the claim was not in substantial compliance with the provisions of the statute, but, on the contrary, must assume that it was held to be a reasonable and substantial compliance on the part of Mrs. Nance in the presentation of her claim to the city for consideration. In *Ottawa v. Black,* 10 Kan. App. 439, 61 Pac. 985, it was held "that the verification of a claim against a city by the husband, as agent of claimant, is sufficient to satisfy the requirements of section 67, c. 37, Gen. St. 1897," which reads:

"All claims against the city must be presented in writing, with a full account of the items, and verified by the oath of the claimant, or his agent, that the same is correct, reasonable, and just," etc.

The proof in this case shows that Mr. Nance was the agent of his wife for the purpose of presenting this claim to the city. The statute upon which the last-named opinion is based is identical with ours on the point under consideration, and to our mind is an effectual disposition of the alleged error urged by the city in this case. See, also, *Oklahoma City v. Welsh,* 3 Okla. 288, 41 Pac. 598; *City of Wyandotte v. White,* 13 Kan. 192; 28 Cyc. p. 1748 *et seq.* It was further said by the court in the case last above cited:

"Even if our conclusion on this point was otherwise, we doubt whether the provisions of the Code of Civil Procedure relating to competency of witnesses in civil actions have any application to the facts under consideration."

It is next urged that the court erred in giving the jury the following instruction:

"The court instructs you that a person may have knowledge of a defect in a sidewalk, and that the same is unsafe and out of repair, and yet not be guilty of negligence, should he be injured thereby, provided he does not needlessly or recklessly run into danger."

The testimony in this case shows that plaintiff was familiar with the locality in which the injury occurred; that she knew of the existence of the excavation, and could have seen it had she looked; that she stepped backward into the hole without looking in the direction of the excavation; that the sidewalk, at that point, was about ten feet wide, and the hydrant, which was standing in the excavation, was near the south edge of the sidewalk. In *Pitman v. City of El Reno,* 4 Okla. 638, 46 Pac. 495, it is said:

"When a person travels along a highway which he knows to be dangerous, the law is not satisfied unless he uses care commensurate with the danger about to be encountered."

In *Ladow v. Oklahoma Gas & Elec. Co.,* 28 Okla. 15, 119 Pac. 250, it is said:

"Contributory negligence is nothing more nor less than negligence on the part of the person injured, and the rules of law applicable to the negligence of a defendant are applicable thereto."

Thompson on Negligence, sec. 169, defines contributory negligence as follows:

"Contributory negligence, in a sound juridical sense, is the negligence of the plaintiff, or of the person on account of whose death or injury the action is brought, amounting to a want of ordinary care, and proximately contributing to bring about the injury."

While in 7 Am. Eng. Enc. Law, 371 (2d Ed.), it is said:

"Contributory negligence is a want of ordinary care upon the part of a person injured by the actionable negligence of another, combining and concurring with that negligence, and contributing to the injury, as the proximate cause thereof, without which the injury would not have occurred."

In *St. L. & S. F. R. Co. v. Elsing,* 37 Okla. 333, 132 Pac. 483, contributory negligence is defined as follows:

"Contributory negligence is the negligence of the plaintiff, or of the person on account of whose death or injury the action is brought, amounting to a want of ordinary care, and proximately contributing to bring about the injury. To constitute such negligence as will bar recovery of damages, two elements must in every case concur, viz.: First, a want of ordinary care on the part of plaintiff; second, a proximate connection between this want of ordinary care and the injury complained of. These questions are for the determination of the jury, and an instruction depriving a litigant of the full defense of contributory negligence is the deprivation of a substantial right and therefore error."

Section 6, art. 23, of the Constitution (section 355, p. 218, Williams' Ann. Ed.), reads as follows:

"The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall at all times, be left to the jury."

The defense of contributory negligence was well pleaded in the case at bar. It, like other questions of fact, was for the determination of the jury; the defendant had a right, under the Constitution and laws, to have that issue fairly submitted by proper instructions. The instruction given is open to many

criticisms, chief among which are that it fails to define what contributory negligence is, so that the jury could pass intelligently upon that issue, and, further, there is a very grave doubt but what the instruction complained of shifts the burden of proof on that subject from the plaintiff to the defendant.

Under this instruction, had plaintiff been injured by falling into the excavation, in any other manner than by "needlessly or recklessly" running into the same, she would not have been guilty of contributory negligence. It was the duty of defendant in error, in passing along the sidewalk, knowing the excavation was there, to use ordinary care, and it was defendant's right to have the jury say whether or not she did in fact exercise such care as would exonerate her from the charge of contributory negligence as hereinabove defined.

The instruction given does not meet the requirements, and the judgment should therefore be reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.