## CITY OF INDIANAPOLIS ET AL. *v.* COX.

[No. 10,898. Filed June 28, 1921.]

1. MUNICIPAL CORPORATIONS.—*Personal Injuries.*—*Complaint.*—*Theory.*—*Negligence of City and Contractors.*—In an action against a city and others for injury to a driver of a team from an unguarded dangerous place in a street due to improvements being made therein, *held*, relative to the question of the conformity of instructions to the complaint, that the theory of the complaint, though alleging that the city knew of the dangerous condition, or could have learned of it by due diligence, was that the city and other named defendants were jointly engaged in doing the work, and that the negligent acts causing plaintiff's injuries were the joint acts of defendants, and not that the work was being done by an independent contractor, so that the city would be liable only after due notice of the defect causing the injury. p. 178.

2. MUNICIPAL CORPORATIONS.—*Public Improvements.*—*Personal Injuries.*—*Negligence of Contractor.*—It is the primary duty of a city, of which it can neither evade nor divest itself, to maintain its streets in a safe condition for public travel, and, though the work of improving a city street is being done by a contractor under a contract stipulating that he should take proper precautions for the protection of the public by guarding and protecting all dangerous places arising during the prog-

ress of the work, the duty of providing such protection rests primarily upon the municipality and is nondelegable, so that, as regards the guarding of dangerous excavations incident to making the improvement, the contractor is the city's agent, for whose negligence it is liable, even though without notice. p. 179.

From Morgan Circuit Court; *Alfred M. Bain*, Judge.

Action by Leonard Cox against the City of Indianapolis and others. From a judgment for plaintiff, the defendant named appeals. *Affirmed.*

*Samuel Ashby, Thomas D. Stevenson, Harry E. Yockey, Dixon H. Bynum* and *S. C. Kivett,* for appellant.

*Bachelder & Bachelder* and *Homer L. McGinnis,* for appellee.

McMAHAN, J.—Complaint by appellee against the city of Indianapolis, Charles C. Brady and Fisher-Dugan Company for damages on account of personal injuries sustained by appellee while driving along Belmont avenue. The complaint in substance alleges that on the night of December 14, 1914, appellee was driving a team of horses drawing a wagon loaded with hogs along Belmont avenue, going south from Washington street in the city of Indianapolis. Referring to the place where appellee was injured, the negligence of the defendants was charged in the following language: "That the defendants had at this place caused said street to be divided along the center of said street in such a way that the surface of said street presented two separate and distinct elevations. That part on the west half of said street was caused to be made by the defendants about three feet higher than that part along the east half of said street, by which defendants thereby caused said street at said place to become very dangerous and hazardous and unsafe for persons traveling thereon. That the said defendants so filled and execa-

vated said street at said place that one side thereof became very high and rough, and the other side immediately adjacent thereto became very deep and precipitous, to wit: about three feet lower, and so constructed as to form an abrupt and steep precipice between the high side and the low side, which said precipice was about the center of said street and ran laterally with said street. * * * that said dangerous condition of said street was caused and made by the negligence, carelessness and unlawfulness of defendants. That defendant City knew of said dangerous condition, or could have learned of same by use of due diligence."

It was also alleged that the defendants at the time plaintiff was injured maintained said place in an unsafe condition and negligently failed to place any warning, barricade or sign to warn people using the street of its unsafe condition, and that when appellee drove over said street his wagon was overturned and he was injured by reason of the negligence of the defendants.

Fisher-Dugan Company defaulted. The city and Brady appeared and filed answers of denial.

This appeal is prosecuted by the city alone, the other defendants being named as appellants but after notice failed to join in the appeal, so when we speak of appellant it will be understood that we refer to the city.

Appellant contends that the court erred in refusing to give instructions Nos. 9 and 10 requested by it and in giving instructions Nos. 1, 3, 7, 13, 14 and 15. We will take these questions in the order in which they are presented in appellant's brief. In instruction No. 9, appellant requested the court to instruct the jury, that, if the work was being executed by an independent contractor, not under the supervision of appellant, and if the unsafe condition was created by the contractor, and appellant did not know of such unsafe condition and

could not have known of such unsafe condition by the exercise of ordinary care, in time to have repaired the same before the injury, they should find for appellant. By No. 10 the court was asked to instruct the jury that in determining whether appellant was negligent in failing to place warning lights; they must find that the street was not in a reasonably safe condition for travel and that such condition was known to appellant, or could have been known by the use of reasonable care in time to have set out lights prior to the injury, and if they found that the street was in an unsafe condition for travel but that appellant did not know of such condition, and could not in the exercise of ordinary care have known of such condition in time to set out such lights it would not be negligent in failing to set them out.

The evidence shows that appellant entered into a written contract with Brady, whereby the latter agreed to improve Belmont avenue by grading, graveling and rolling the same according to certain plans and specifications on file in the office of board of public works. Said contract required the contractor to guard and protect all excavations and dangerous places and use precaution to prevent injury to any person or property and give a bond to indemnify and save appellant harmless because of any claims arising out of the construction of said improvement. After Brady had entered into the contract and given bond as required, he assigned the contract to Fisher-Dugan Company but there is no evidence that it had anything to do with the work. From the evidence it appears that Brady was present every day while the work was going on and seemed to be the manager in charge of the work, which required the filling in and elevating the street several feet at the place where appellee was injured. J. D. Adams whose

machine shop was on the east side of Belmont avenue testified that he loaned Brady some machinery and did some repairing for him; that the west side of the street was filled first and the other side left for travel, the west half being about thirty inches higher than the east half with a forty-five degree slope between the two levels. There was a roadway open for travel on the west half twenty-four to thirty feet wide; he tried to be nice to the contractor, Brady, and asked him to "keep us open so we could do our hauling ourselves, and we wanted him to work that in such a way as to keep open so we could travel." Other witnesses testified that the west part of the street where appellee overturned was filled in so that it was four feet higher than the east part of the street with almost a perpendicular drop. That it had been in this condition two or three weeks without any barricades or lights at night to warn the travelers of the condition. Appellee was driving south along the west side of this street after dark on his way to the stock yards with a wagonload of hogs and in so doing got so close to the center of the street that his wagon overturned and injured him.

There is no evidence that appellant had anything to do with the grading of the street or that it gave any attention to the work after the execution of the contract. It was specified in the contract that the work should be done at the contractor's risk and that he should assume all liability and should protect appellant from any loss on account of any injury to any person during the progress of the work.

Appellant contends that the theory of the complaint is that the work was being done by an independent contractor; that appellant was liable only after 1. notice, and that it was error for the court in its instructions to adopt the theory that appellant was liable jointly with the contractor without regard

to the question of notice, as was done when the court refused to give instructions Nos. 9 and 10 tendered by it and when it gave instructions Nos. 6 and 7.

We cannot agree with this contention. The theory of the complaint is that appellant and the other named defendants were jointly engaged in doing the work and that the negligent acts which caused appellee's injuries were the joint acts of the defendants. The allegation in the complaint that the "city knew of said dangerous condition, or could have learned of same by use of due diligence" is not sufficient to charge that the acts complained of were the negligent acts of the independent contractor or a third party and that the city had either actual or constructive notice of such negligent acts.

As said by this court in *Moore* v. *City of Bloomington* (1911), 51 Ind. App. 145, 149, 95 N. E. 374, 375:  "It is well settled that where a fixed, certain and

2.    absolute duty of a purely ministerial character is imposed on a city by statute, and means are provided whereby such duty may be discharged, it is under obligation to perform; and it will be held answerable in damages for its failure to perform, or for its negligent performance of such duty. By the application of this principle, cities in this State have been held liable for a failure to keep their streets in a safe condition for travel, and for negligently permitting such streets to become obstructed or out of repair so as to be dangerous.  *  *  *  If a person without the knowledge of the city and without license or authority from it makes an excavation in a street or places an obstruction therein, whereby the condition of the street is made dangerous, the city is not liable for injury resulting from such dangerous condition, unless it appears that the city had either actual or constructive notice of such condition in time to have taken precautions to prevent the injury. In such a case, the only negligence that

can be charged against the city is that it failed to take proper precaution to prevent injury after notice of the dangerous condition of the street. On the other hand, if the city, by contract or license, authorizes an excavation to be made in a street or an obstruction to be placed therein, which from their character and location will necessarily or probably produce injury to those using the street, unless precautionary measures are taken to prevent it, such city will be liable in damages to a person injured by reason of the want of necessary precautionary measures to make it safe. To render the city liable in such a case, it is not necessary to show that it had notice that the person who had placed the obstruction or made the excavation in the street pursuant to such authority or license had failed to guard it or to light it, or to take other precautions necessary to make it safe, and that after such notice the city had time to take such precautions before the injury occurred. The duty to see that such precautions are taken rests primarily on the city, and it cannot absolve itself from such duty by delegating it to another." And in the *City of Evansville* v. *Behme* (1912), 49 Ind. App. 448, 97 N. E. 565, where the excavation had been made by a plumber employed by a third party to locate a leak in a sewer or water pipe, the rule was stated as follows: "Where a city authorizes a person not in the employ of the city, and in noway connected with the administration of its affairs, to do some act upon some of its streets, and the act contemplated is of such a character as to create a condition of the street which is necessarily and ordinarily dangerous unless precautions are taken to make it safe, the duty rests primarily on the city to see to it that such precautions are taken, and that the street is made safe for use." And the court on page 452 continuing said: "An excavation made in a street creates a condition which is ordinarily danger-

ous, unless precautions are taken. The precautions necessary to make the street safe under such circumstances are (1) properly to guard the excavation while it remains open, and (2) properly to fill the excavation, and restore the street to a safe condition for use. The duty to see to it that these precautions are used rests primarily on the city, and cannot be delegated to others. The cases heretofore cited fully sustain our position in holding that, under the circumstances stated, the duty of guarding an excavation while it remains open rests primarily on the city, and, by the application of the same principle on which those cases rest, we are led to hold that a like duty rests on the city to see that a street, once made defective or dangerous by an act which it has expressly authorized, is restored to a condition reasonably safe before it is again opened to the public for use."

This rule was applied in the *City of Indianapolis* v. *Doherty* (1880), 71 Ind. 5, where it is said: "It is the duty of cities to keep their streets and sidewalks in a reasonably safe condition for travel in the ordinary modes, and, in default of doing so, they are liable in damages to persons injured by the neglect; and this liability can not be escaped on the ground that the persons using part of the street for building purposes may themselves be liable to persons injured by the obstruction. It is the duty of the city to see that such obstructions are kept in such condition by barricades, lights, or such other means as may be necessary, as to render travel reasonably safe."

In *Park* v. *Board, etc.* (1892), 3 Ind. App. 536, 30 N. E. 147, the court after stating the general rule to be that the obligation of a town or city to keep its streets in a safe condition for the passage of persons is a primary one which the municipality cannot divest itself, said: "It is also well settled by the great weight

of authority, that because of this duty to the public, a city or town, when having work done on its streets or bridges, although by a contractor, is bound to see that such precautions are used while the work is in progress as are reasonably necessary to protect travel. No matter what kind of contract the city may make, nor with whom, it still remains charged with the care and control of the street in which the improvement, change or repair is being made, and it can not throw off its duty and the responsibilities through which that duty is to be enforced. * * * And in such cases notice to the municipality of the absence of proper precautions and guards would not be necessary."

The rule is thus stated by Judge Dillon: "Whether the duty of maintaining the streets in a safe condition for public travel and use is specially imposed on the corporation, or is deduced in the manner before stated, *it rests primarily, as respects the public, upon the corporation,* and the obligation to discharge this duty can not be evaded, suspended, or cast upon others, by any act of its own. Therefore, according to the better view, where a *dangerous excavation is made* and negligently left open (without proper lights, guards, or covering), in a travelled street or sidewalk, *by a contractor under the corporation* for building a sewer or other improvement, the corporation is liable to a person injured thereby, although it may have had no immediate control over the workmen, and had even stipulated in the contract that proper precautions should be taken by the contractor for the protection of the public, and making him liable for accidents occasioned by his neglect." Dillon, Municipal Corporations (5th ed.) §1720.

The full character and extent of the work being done is not shown by the evidence. The contract was entered into November 13, 1914, and by its provisions the work was to be completed on or before the 14th day of

the following month, which indicates it was not a very large undertaking. Another evidence of this is that the penalty named in the bond which appellant required of the contractor was but $1,535. While the work was not extensive it appears from the evidence that the ground over which the street ran was quite low, there being depressions of from six to eight feet near the place where appellee was injured. There was at least one twenty-four inch sewer pipe culvert with two concrete headers, and also box culverts to be placed therein, although the size and number of the latter are not disclosed. Thus we have comparatively speaking a contract calling for an improvement that could not have extended over many blocks calling for the cutting down, filling in, grading and rolling of the street to a width including the space for sidewalks of fifty feet, the fill amounting to as much as four feet in places, with one twenty-four inch culvert of sewer pipe with two concrete headers, box culverts and connections to be made for water, sewer and gas. This work was to be done in one of the main traveled streets leading to the stock yards, a street known to be used by farmers who wished to be at the yards early in the morning with their stock. Such an improvement with the cuts, fills, excavations for culverts, water, gas and sewer connections might not necessarily make travel over such street in the night time dangerous, but it was such as from its character and location would probably produce injury to those using the street, unless precautionary measures were taken to prevent it. As said in *Moore* v. *City of Bloomington, supra,* "To render the city liable in such a case, it is not necessary to show that it had notice," etc. It is the duty of the city to see that such places are guarded and protected. This duty cannot be avoided by letting the work to an independent contractor. It being the duty of appellant to guard the dangerous lo-

cations, the contractor in doing the work became the agent of appellant to that extent. The neglect of the contractor to guard the dangerous places was under such circumstances the neglect of appellant, and no notice to appellant was necessary, since notice to the agent was notice to appellant. There was no error in refusing to give instructions Nos. 9 and 10 tendered by appellant. Neither was there any error in the sixth instruction given by the court to the effect, that, if a city and its contractors and sub-contractors engage in improving a street where the work contemplated involves grading and filling in such a manner as to render the street unsafe for travel, it is the duty of all three parties, including the city, to see that such dangerous places are properly safeguarded by barricades, lights and other signal devices, unless the danger is open and obvious without any warning devices and that the city cannot relieve itself of this duty by turning the work over to the contractor.

Appellant also contends that instructions Nos. 6 and 7 given by the court were calculated to and did erroneously cause the jury to believe that if Fisher-Dugan Company was liable, the appellant was also liable, and having in other instructions directed a verdict against that company, it was inevitable that the jury should return a verdict against appellant. We do not think this objection tenable. While the peremptory instructions relative to the liability of Fisher-Dugan Company may not have been correct, the jury were instructed that, even though it found against that company they might find in favor of appellant. The instructions given by the court are not entirely in harmony with the master and servant rule, but since the court did not instruct that the negligence, if any, of Fisher-Dugan Company was the negligence of the appellant, but instructed that they could return a verdict in favor of appellant

and against Fisher-Dugan Company, appellant is in no position to complain.

There was no reversible error in the giving or refusing to give any of the instructions mentioned.

Judgment affirmed.